Marlene BROWN and Kurt Brown, Plaintiffs-Appellants-Cross-Respondents-Cross Petitioners,

v.

David G. DIBBELL, M.D., Midelfort Clinic, Ltd., a Mayo Regional Practice, and Physicians Insurance Company of Wisconsin, Defendants-Respondents-Cross-Appellants-Petitioners,

Steven D. JOHNSON, M.D., Meridian Resource Corporation on behalf of Benefit Plan Administrators Co. and Wisconsin Physicians Service-Medicare Part B, Defendants.

Supreme Court

*No. 97–2181. Oral argument April 8, 1999.—Decided June 23, 1999.*

(Also reported in 595 N.W.2d 358.)

28

For the defendants-respondents-cross-appellants-petitioner's there were briefs by *Joy L. O'Grosky, Curtis C. Swanson, Rita M. Knauss, Nicholas S. Harned* and *Axley Brynelson, LLP*, Madison and oral argument by *Joy L. O'Grosky*.

For the plaintiffs-appellants-cross respondents-cross petitioners there were briefs by *Thomas Kent Guelzow, Michael L. Laufenberg* and *Guelzow & Laufenberg, Ltd.*, Eau Claire and· oral argument by *Thomas Kent Guelzow.*

Amicus curiae brief was filed by *D.J. Weis* and *Habush, Habush, Davis & Rottier, S.C.*, Rhinelander for the Wisconsin Academy of Trial Lawyers.

Amicus curiae brief was filed by *William H. Levit, Jr., Michael B. Apfeld* and *Godfrey & Kahn, S.C.*, Milwaukee and *Steven J. Caulum* and *Bell, Gierhart & Moore, S.C.*, Madison for the Wisconsin Patients Compensation Fund.

¶ 1. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE. This is a review of a published opinion of the court of appeals, *Brown v. Dibbell*, 220 Wis. 2d 200, 582 N.W.2d 134 (Ct. App. 1998). The Circuit Court for Trempealeau County, John A. Damon, Judge, entered judgment in favor of Marlene Brown and her husband Kurt Brown against David G. Dibbell, Midelfort Clinic, Ltd., Physicians Insurance Company of Wisconsin and

Wisconsin Patients Compensation Fund.[1] The court of appeals concluded that the circuit court had erred and remanded the cause for a new trial.

¶ 2. Marlene Brown and her husband, Kurt Brown, referred to collectively as the plaintiffs, allege that Ms. Brown sustained injuries as a result of Dr. David G. Dibbell's violation of the Wisconsin informed consent statute, Wis. Stat. § 448.30 (1993–94).[2] The plaintiffs sued Dr. Dibbell; the Midelfort Clinic, Ltd., which employed Dr. Dibbell; their joint insurer, Physicians Insurance Company of Wisconsin; and the Wisconsin Patients Compensation Fund, referred to collectively as the defendants.[3]

¶ 3. Two issues are presented in this informed consent action. The first issue is whether the circuit court erred in instructing the jury that Ms. Brown may be found contributorily negligent under Wis. Stat. § 448.30. The jury found that Ms. Brown was contributorily negligent, that is, she failed to exercise ordinary care with regard to her own health and well-being.

¶ 4. The second issue is whether the circuit court erred in failing to instruct the jury about defenses

[1] The plaintiffs sued a second physician, Dr. Steven D. Johnson. The jury found that he was not causally negligent for Ms. Brown's injuries. Dr. Johnson and the companion parties, Meridian Resource Corporation on behalf of Benefit Plan Administrators Co., and Wisconsin Physicians Service-Medicare Part B, are not parties to this review.

Neither the plaintiffs nor the defendants sought review of the jury's findings on damages.

[2] All subsequent references to the Wisconsin Statutes will be to the 1993–94 version unless otherwise noted.

[3] The Wisconsin Patients Compensation Fund no longer has any financial interest in the outcome of the case but filed an amicus brief arguing that a patient not be insulated from the consequences of his or her own negligence.

asserted by Dr. Dibbell under Wis. Stat. § 448.30. The jury found Dr. Dibbell negligent with respect to obtaining Ms. Brown's informed consent to the surgery.

¶ 5. As to the first issue, we conclude that as a general rule patients have a duty to exercise ordinary care for their own health and well-being and that contributory negligence may, under certain circumstances, be a defense in an informed consent action. We agree, however, with the court of appeals that the very patient-doctor relation assumes trust and confidence on the part of the patient and that it would require an unusual set of facts to render a patient guilty of contributory negligence when the patient relies on the doctor.

¶ 6. The more difficult question then is to define the dimensions of a patient's duty to exercise ordinary care for the patient's health and well-being under Wis. Stat. § 448.30. The record in this case presents three aspects of a patient's duty.[4] We examine each in turn and conclude that the circuit court erred in not tailoring the pattern jury instruction on contributory negligence as we describe below.

¶ 7. (1) A patient's duty to exercise ordinary care in an informed consent action includes a patient's duty to tell the truth and give complete and accurate information about personal, family and medical histories to a doctor to the extent possible in response to the doctor's requests for information when the requested information is material to the doctor's duty prescribed in Wis. Stat. § 448.30. The jury should have been so instructed in the present case.

---

[4] The court of appeals noted that "we perceive defining the dimensions of a patient's duty in an informed consent case to be a virtually impossible task." *Brown v. Dibbell*, 220 Wis. 2d 200, 207, 582 N.W.2d 134 (Ct. App. 1998).

¶ 8. (2) A patient's duty to exercise ordinary care in an informed consent action generally does not impose on the patient an affirmative duty to ascertain the truth or completeness of the information presented by the doctor; to ask questions of the doctor; or to independently seek information when a reasonable person would want such information. We conclude that a patient usually has the right to rely on the professional skills and knowledge of a doctor. We do not conclude, however, that a patient may never be contributorily negligent for failing to take such steps. We merely conclude that it would require a very extraordinary fact situation for a jury to be instructed that a patient may be found contributorily negligent for relying on the information presented by the doctor, for failing to ask the doctor for information or for failing to independently seek information. The evidence does not place this case in the realm of the extraordinary.

¶ 9. (3) A patient does not, except in a very extraordinary fact situation, fail to exercise ordinary care for her health or well-being in an informed consent action when the patient chooses a viable medical mode of treatment presented by a doctor. The evidence does not place this case in the realm of the extraordinary.

¶ 10. As to the second issue presented in this case, we conclude that the circuit court erred in refusing to grant defendants' motion to instruct the jury about defenses set forth in Wis. Stat. § 448.30, when evidence suggesting such defenses was presented.

¶ 11. We affirm the decision of the court of appeals that the cause be remanded to the circuit court for a new trial, but our rationale is different from that of the court of appeals.

I

¶ 12. These are the relevant facts for review. At age 36, Marlene Brown sought the advice of her doctor, Dr. R.P. Alfuth of the Midelfort Clinic, for his opinion about a lump in her right breast. Dr. Alfuth examined Ms. Brown and felt a possible cyst in her right breast. He decided to obtain a mammogram and, because Ms. Brown had saline breast implants, sent her for a consultation with Dr. David Dibbell, a reconstructive surgeon at the Midelfort Clinic who was familiar with examining patients with breast implants.

¶ 13. On June 17, 1993, Dr. Perry L. Kyser, a radiologist at the Midelfort Clinic, reported that Ms. Brown's mammogram showed a possible density in her right breast, that clinical confirmation was recommended, and that if clinical examination revealed no palpable abnormality in the right breast, then "follow-up of the right breast only in 6 months [was] suggested."

¶ 14. On August 30, 1993, Ms. Brown consulted with Dr. Dibbell. At trial, Dr. Dibbell testified that at this first consultation with Ms. Brown he reassured her that the lump she detected was actually a portion of her implant. Ms. Brown told him that her twin sister had died three years previously from breast cancer, that her mother also had breast cancer, and that she had multiple other female relatives with the disease. He testified that he explained to Ms. Brown that she was at "high risk" for developing breast cancer because of her family history, but that there was nothing to indicate that she had cancer. Dr. Dibbell also testified that Ms. Brown repeatedly asked about treatment options despite his insistence that the discussion was premature until after he had consulted with the radiologists. Dr. Dibbell stated that he reluctantly discussed with

36

Ms. Brown the option of elective bilateral mastectomies because of her remarkable fear of developing breast cancer, her significant family history of the disease and the difficulty of assessing the lump because of her breast implants.

¶ 15. Dr. Dibbell testified that shortly after this first consultation with Ms. Brown, he consulted with Dr. Kyser and another radiologist at the Midelfort Clinic. According to Dr. Dibbell's testimony, the radiologists told him that they did not consider the lesion to be suspicious and that therefore it was reasonable to wait six months and take another mammogram of her right breast. He also testified that the radiologists told him that biopsy by "needle localization" was not medically indicated because the needle might puncture her implant and that the procedure was otherwise futile because the lesion could not be localized by touch.

¶ 16. On September 9, 1993, Dr. Dibbell saw Ms. Brown for a follow-up examination. Dr. Dibbell physically re-examined Ms. Brown's right breast and again concluded that he felt nothing particularly suspicious. Dr. Dibbell testified that he spent 40 minutes at the September 9, 1993, consultation and discussed treatment options with Ms. Brown. He stated that these discussions included the radiologists' opinions that it was reasonable to wait for six months and that needle localization was not appropriate. Dr. Dibbell also testified that Ms. Brown refused the option of waiting for six months and then taking another mammogram because of her intense fear of developing breast cancer. He explained to her that if she felt she had to do something, prophylactic bilateral mastectomies made better sense than many inconclusive biopsies.

¶ 17. On September 15, 1993, Ms. Brown consulted with Dr. Johnson, a surgeon at Midelfort Clinic,

who testified that Ms. Brown told him her twin sister, her mother and two aunts had breast cancer. Dr. Johnson testified that he told Ms. Brown that she was in a high risk category of developing breast cancer. Dr. Johnson testified that he informed Ms. Brown that he considered her two treatment options to be either a repeat mammogram in six months or prophylactic mastectomies.

¶ 18. On November 1, 1993, Dr. Dibbell conducted a pre-operative history and physical examination of Ms. Brown. In his testimony, Dr. Dibbell stated that during this consultation he again advised Ms. Brown that there was no evidence that she had cancer and that her breasts would be smaller as a result of the surgery. He said he advised her that this was a significant surgical procedure requiring general anesthesia.

¶ 19. On November 3, 1993, Dr. Dibbell again spoke with Ms. Brown immediately before her surgery. He testified at trial that he again reassured her that she did not have cancer, that if an implant broke he would replace it with a new one and that he would do everything possible to minimize her pain and ensure her safety and comfort during surgery.

¶ 20. Ms. Brown testified that Dr. Dibbell never informed her that the radiologists had found nothing wrong with her right breast and that they had recommended a treatment plan of a follow-up mammogram in six months. She also testified that Dr. Dibbell never discussed with her the option of seeking a biopsy by needle localization or any other alternative treatment plan. Ms. Brown also testified that neither Dr. Dibbell nor Dr. Johnson could tell her whether she had breast cancer, but that they did tell her there was a high risk

of her developing breast cancer and that bilateral mastectomies were the best way to reduce the risk.

¶ 21. Following surgery, Ms. Brown experienced several problems including scarred breasts, asymmetrical nipples and areola, loss of sensation in her breasts, and other problems requiring additional surgeries.

¶ 22. On February 25, 1995, the plaintiffs commenced this action alleging that Dr. Dibbell and Dr. Johnson had violated their duties under Wis. Stat. § 448.30 by failing to properly disclose to Ms. Brown the risks of, the possible alternatives to and the disadvantages of bilateral mastectomies, and by failing to advise Ms. Brown accurately of her post-operative appearance. The plaintiffs claimed that Dr. Dibbell never discussed with Ms. Brown treatment options such as continued mammograms or waiting six months; that he incorrectly represented to her that the bilateral mastectomies would prevent the development of breast cancer; that he never told her or quantified her exact risk of developing breast cancer; and that he repeatedly reassured her that with postoperative reconstruction she would be as cosmetically pleasing in appearance as she had been prior to the mastectomies.

¶ 23. The plaintiffs also brought medical malpractice claims against Dr. Dibbell and Dr. Johnson alleging that they were negligent in their duties as doctors for deciding to perform and then performing the bilateral mastectomies. With regard to the losses sustained by Mr. Brown, the plaintiffs asserted a claim for loss of consortium, society and companionship due to the injuries sustained by Ms. Brown.[5]

---

[5] The plaintiffs further alleged that Ms. Brown suffered severe and catastrophic injuries, including severe temporary and permanent injuries; pain and suffering; disability; disfig-

¶ 24. The jury found that Dr. Dibbell was negligent in obtaining Ms. Brown's consent to surgery; that Dr. Johnson was not negligent in obtaining Ms. Brown's consent to surgery; that neither doctor was negligent in rendering medical care to Ms. Brown; and that a reasonable patient in Ms. Brown's circumstances, if adequately informed, would have refused to undergo the surgery that was performed.[6] The jury awarded $150,000 in damages to Ms. Brown and $15,000 to Mr. Brown. The jury, however, also found that Ms. Brown was causally negligent for failing to exercise ordinary care with respect to her own health and well-being. The jury apportioned 50% causal negligence each to Dr. Dibbell and Ms. Brown.

¶ 25. The parties brought several post-verdict motions. Among these were the plaintiffs' challenge to the jury finding of Ms. Brown's contributory negligence and the defendants' motion for a new trial on the ground that the circuit court refused to instruct the jury on the defendants' proposed jury instructions on various defenses. The circuit court denied these post-verdict motions. The court of appeals reversed the judgment of the circuit court and remanded the cause to the circuit court for a new trial.

urement; and loss of enjoyment of life. They further alleged that she would experience great pain, suffering, disability, disfigurement and loss of enjoyment of life in the future. In addition, the plaintiffs alleged that Ms. Brown incurred and would continue to incur substantial medical, hospital, drug and nursing expenses and miscellaneous related expenses, as well as lost wages and loss of earning capacity.

[6] The claims against Dr. Johnson and the medical malpractice claim against Dr. Dibbell are not at issue in this appeal.

## II

¶ 26. The first issue is whether the circuit court erred in instructing the jury that Ms. Brown may be found contributorily negligent in this informed consent action under Wis. Stat. § 448.30 (1993–94). Contributory negligence is conduct by an injured party that falls below the standard to which a reasonably prudent person in that injured party's position should conform for his or her own protection and that is a legally contributing cause of the injured party's harm.

¶ 27. The circuit court gave the jury the pattern instruction on contributory negligence, which is a general instruction about failing to exercise ordinary care. The jury found Dr. Dibbell negligent and Ms. Brown contributorily negligent. It attributed 50% of the causal negligence to Dr. Dibbell with respect to obtaining Ms. Brown's informed consent to the surgery and 50% to Ms. Brown with respect to exercising ordinary care for her own health and well-being.

¶ 28. The court of appeals examined various aspects of contributory negligence raised by the evidence in the record. The court of appeals held in the context of Wis. Stat. § 448.30 that a patient would not be contributorily negligent by failing to investigate or question information provided by a doctor or to seek quantification of information about the risks involved in a particular treatment option. The court of appeals concluded that in all but the most extraordinary instance, a patient could not be found contributorily negligent by consenting to a treatment or procedure that a doctor presents as a viable option.[7] The court of appeals did not view the evidence in this case as

---

[7] The court of appeals opinion is ambiguous because it can also be read as saying that the court of appeals hesitates to

41

presenting any such extraordinary instance. Finally, the court of appeals concluded that the evidence in the record does not sustain the jury's verdict that Ms. Brown was contributorily negligent.

¶ 29. The availability and nature of a defense of contributory negligence are questions of law that this court considers independent of the decisions of the circuit court and court of appeals, but benefiting from their analyses.

¶ 30. To answer the question presented about the role of contributory negligence in an informed consent action, we turn first to the informed consent statute, Wis. Stat. § 448.30, which provides that "any physician who treats a patient shall inform the patient about the availability of all alternate viable medical modes of treatment and about the benefits and risks of these treatments." Wisconsin Stat. § 448.30 in its entirety provides as follows:

> **448.30 Information on alternate modes of treatment.** Any physician who treats a patient shall inform the patient about the availability of all alternate, viable medical modes of treatment and about the benefits and risks of these treatments. The physician's duty to inform the patient under this section does not require disclosure of:
>
> **(1)** Information beyond what a reasonably well-qualified physician in a similar medical classification would know.
>
> **(2)** Detailed technical information that in all probability a patient would not understand.
>
> **(3)** Risks apparent or known to the patient.
>
> **(4)** Extremely remote possibilities that might falsely or detrimentally alarm the patient.

declare an absolute rule that a patient can never be negligent by failing to make sufficient inquiries of a doctor.

**(5)** Information in emergencies where failure to provide treatment would be more harmful to the patient than treatment.

**(6)** Information in cases where the patient is incapable of consenting.

¶ 31. The informed consent statute is silent about contributory negligence. An action alleging a doctor's failure to adequately inform a patient is, however, grounded on a negligence theory of liability. Contributory negligence is generally a defense in an action based on a negligence theory of liability.

¶ 32. The doctrine of informed consent focuses on the reasonableness of a doctor's disclosure.[8] The standard regarding what a doctor must disclose is described as "the prudent patient standard." To fulfill the doctor's duty under Wis. Stat. § 448.30 a doctor must provide information that a reasonable person in the patient's position would want to know in order to make an informed decision with respect to the alternative choices of treatments or procedures. That information includes "an assessment of and communication regarding 'the gravity of the patient's condition, the probabilities of success, and any alternative treatment or procedures if such are reasonably appropriate.'" *Johnson v. Kokemoor*, 199 Wis. 2d 615, 632, 545 N.W.2d 495 (1996) (quoting *Scaria v. St. Paul Fire & Marine Ins. Co.*, 68 Wis. 2d 1, 11, 227 N.W.2d 647

---

[8] *Johnson v. Kokemoor*, 199 Wis. 2d 615, 629, 545 N.W.2d 495 (1996); *Martin v. Richards*, 192 Wis. 2d 156, 171, 531 N.W.2d 70 (1995); *Trogun v. Fruchtman*, 58 Wis. 2d 569, 600, 207 N.W.2d 297 (1973).

43

(1975)).[9] "The information that is reasonably necessary for a patient to make an informed decision regarding treatment will vary from case to case." *Martin v. Richards*, 192 Wis. 2d 156, 175, 545 N.W.2d 495 (1996).[10]

¶ 33. There is little authority on the role of contributory negligence in informed consent actions. The plaintiffs assert that the circuit court erred in giving the jury the pattern jury instruction on contributory

---

[9] *See also Martin*, 192 Wis. 2d at 174. As the court stated in *Scaria v. St. Paul Fire & Marine Ins. Co.*, 68 Wis. 2d 1, 13, 227 N.W.2d 647 (1975):

> In short, the duty of the doctor is to make such disclosures as appear reasonably necessary under circumstances then existing to enable a reasonable person under the same or similar circumstances confronting the patient at the time of disclosure to intelligently exercise his right to consent or to refuse the treatment or procedure proposed.

[10] The circuit court gave the jury the following instruction on informed consent based on Wis JI—Civil § 1023.2 ("Malpractice: Informed Consent"):

> A physician who proposes to perform an operation must make such disclosures as will enable a reasonable person under the circumstances confronting the patient to exercise the patient's right to consent to, or to refuse, the operation proposed.
>
> The doctor's disclosure must be sufficient to enable a reasonable person, situated as was the patient, to understand: his or her existing physical condition, the risks to his or her life or health which the operation imposes, and the purposes and advantages of the operation.
>
> The doctor must inform the patient whether the operation proposed is ordinarily performed in the circumstances confronting the patient, whether alternate procedures approved by the medical profession are available, what the outlook is for success or failure of each alternate procedure, and the risks inherent in each alternate procedure.

negligence.[11] They ask this court to reverse the jury verdict regarding Ms. Brown's contributory negligence and to hold that Ms. Brown could not, as a matter of law, be found contributorily negligent.

¶ 34. The defendants, on the other hand, argue that the circuit court's instruction on contributory negligence was correct. They ask this court to reverse the

---

[11] The circuit court gave the jury the following instruction on contributory negligence based on Wis JI—Civil § 1007 ("Contributory Negligence: Defined"):

> Every person in all situations has a duty to exercise ordinary care for his or her own safety. This does not mean that a person is required at all hazards to avoid injury; a person must, however, exercise ordinary care to take precautions to avoid injury to himself or herself.
>
> To be free of negligence, a person must exercise ordinary care in choosing his or her course of conduct and in the pursuit of that choice. A person is not guilty of negligence in making a choice of conduct if the person has no knowledge that one course of conduct carries a greater hazard than another, provided that such lack of knowledge is not the result of the person's failure to exercise ordinary care.

On the basis of this instruction, the jury answered "yes" to the following question presented in the special verdict form: "Was the plaintiff, Marlene Brown, negligent in respect to her own health and well being?"

With regard to this instruction, the circuit court made the following comments on the record:

> [J]ust assume that the Doctor did not give enough information to the person. . . .At the same time, I think there's an argument that—I don't know if it's valuable, but it's possible that somebody could say, well, I consented to this operation. I went ahead and let him do surgery because it's a two-person thing, and I. . .didn't bother even being informed about it properly ahead of time. . . .The patient still has a duty of ordinary care to look out for her own well-being. . . . [I]f she did consent to the surgery without proper information, which is alleged, then she maybe did not exercise ordinary care for herself.

court of appeals decision and reinstate the jury verdict finding Ms. Brown contributorily negligent.

¶ 35. The defendants argue that the doctrine of contributory negligence applies to all negligence cases and that because informed consent actions are based on negligence liability, the doctrine of contributory negligence applies to informed consent actions. They contend that no exception to the applicability of contributory negligence exists in Wis. Stat. § 448.30, and this court should not read an exception into that statute. They rely on the Wisconsin Civil Jury Instruction Committee, which recognizes the applicability of comparative negligence principles in its comment to the informed consent jury instruction. The comment states that "if there is a question of comparative negligence, use the form of Wis. JI—Civil § 3290." Wis JI—Civil § 1023.2 (1998). In sum, the defendants argue that a doctor's statutory duty to inform a patient does not obviate a patient's duty to exercise ordinary care for his or her own health and well-being; rather a doctor and a patient have a joint responsibility to ensure that informed consent is obtained.

¶ 36. We agree with the defendants that patients have a duty to exercise ordinary care for their own health and well-being; that contributory negligence, as a general rule, is an available defense in suits based on negligence; and that contributory negligence may, under certain circumstances, be a defense in an informed consent action because the action is based on negligence. We thus recognize that a patient bringing an informed consent action is not exempt from the duty to exercise ordinary care for his or her own health and well-being. We also agree, however, with the court of appeals that the very patient-doctor relation assumes trust and confidence on the part of the patient and that

46

it would require an unusual set of facts to render a patient guilty of contributory negligence when the patient relies on the doctor.

¶ 37. The more difficult question then is how to define the dimensions of a patient's duty to exercise ordinary care for the patient's health and well-being under Wis. Stat. § 448.30. In other words, we must determine what conduct by a patient might constitute contributory negligence in an informed consent action.

¶ 38. More specifically, as we stated previously, the record in this case presents three aspects of a patient's duty to exercise ordinary care for the patient's health and well-being. The three aspects of a patient's duty to exercise ordinary care are as follows:

¶ 39. (1) Whether a patient's duty to exercise ordinary care in an informed consent action includes a patient's duty to tell the truth and give complete and accurate information about personal, family and medical histories to the doctor to the extent possible in response to the doctor's requests for information when the requested information is material to the doctor's duty prescribed in Wis. Stat. § 448.30. The court of appeals did not address this question.

¶ 40. (2) Whether a patient's duty to exercise ordinary care in an informed consent action imposes an affirmative duty on the patient to ascertain the truth or completeness of the information presented by the doctor; to ask questions of the doctor; or to independently seek information when a reasonable patient would want such information.

¶ 41. (3) Whether a patient fails to exercise ordinary care for her health and well-being in an informed consent action when the patient chooses a viable medical mode of treatment presented by a doctor.

47

¶ 42. We examine each of these aspects of a patient's duty to exercise ordinary care in turn and conclude that the circuit court erred in not tailoring the pattern jury instruction about contributory negligence as we describe below.

(1)

¶ 43. The defendants urge that a patient's duty to exercise ordinary care in an informed consent action includes the patient's telling the truth to the doctor and giving complete and accurate information when the doctor asks about material personal, family and medical histories.[12] They contend that the jury could have concluded that Ms. Brown falsely told the doctors that her mother had breast cancer; that Dr. Dibbell's advice to Ms. Brown that she had a high risk of developing breast cancer was based at least in part on Ms. Brown's misrepresentation; and that therefore the misrepresentation constituted negligence contributing to her injury.

¶ 44. A patient is usually the primary source of information about the patient's material personal, family and medical histories. If a doctor is to provide a patient with the information required by Wis. Stat. § 448.30, it is imperative that in response to a doctor's material questions a patient provide information that is as complete and accurate as possible under the circumstances. We therefore conclude that for patients to exercise ordinary care, they must tell the truth and give complete and accurate information about personal, family and medical histories to a doctor to the extent possible in response to the doctor's requests for information when the requested information is mate-

---

[12] The court of appeals did not address this issue.

rial to a doctor's duty as prescribed by § 448.30 and that a patient's breach of that duty might, under certain circumstances, constitute contributory negligence.[13]

¶ 45. We therefore conclude that the circuit court in the present case should have given the jury an instruction on contributory negligence tailored to Ms. Brown's duty to exercise ordinary care in providing complete and accurate information to her doctors in response to their questions concerning personal, family and medical histories material to their duties prescribed in Wis. Stat. § 448.30.

(2)

¶ 46. The defendants urge that a patient's duty to exercise ordinary care in an informed consent action imposes an affirmative duty on a patient to ascertain the truth or completeness of the information presented by the doctor; to ask questions of the doctor; and to independently seek information when a reasonable patient would want to have such information. They contend that a jury may find a patient contributorily negligent if a reasonable patient would want to know certain information and the patient did not ask the doctor for that information or did not independently seek it out.

¶ 47. The defendants contend that the jury could have found Ms. Brown contributorily negligent because she failed to ask for brochures about mastectomies or

---

[13] We do not address whether a patient's duty to exercise ordinary care requires the patient to volunteer information or to spontaneously advise the doctor of material personal, family or medical histories that the patient reasonably knows should be disclosed.

photographs showing what patients look like after this kind of surgery. According to the defendants, the jury could have found that a reasonable person in Ms. Brown's position would take these measures to ensure that she had enough information to make an informed decision.

¶ 48. The defendants also assert that the jury could have found Ms. Brown contributorily negligent for failing to ask the doctor for more information about her risk of developing cancer. They contend that a reasonable person in Ms. Brown's position who had been told she had a high risk of developing breast cancer would have asked about the statistical chance of developing breast cancer so she could make an informed decision.

¶ 49. According to the plaintiffs, the defendants' position on contributory negligence is nothing more than an attempt to make patients cure the shortcomings of their doctors and to transform a doctor's duty to inform the patient into a patient's duty to seek information.

¶ 50. The rationale underlying the doctrine of informed consent and a doctor's duty to inform a patient is that a patient has a right to decide whether to consent to or refuse a proposed course of treatment. A patient cannot make an informed decision unless a doctor discloses information material to the patient's decision.[14] Thus we conclude that generally in an informed consent action, a patient's duty to exercise ordinary care does not impose on the patient an affirmative duty to ascertain the truth or completeness of the information presented by the doctor; nor does a patient

[14] *Martin*, 192 Wis. 2d at 174; *Scaria*, 68 Wis. 2d at 12–13.

have an affirmative duty to ask questions or independently seek information.

¶ 51. We agree with the plaintiffs and the court of appeals that in most cases it is illogical and contrary to the concept of informed consent to place on patients the burden of asking questions of their doctors or engaging in their own independent research. It is the doctor who possesses medical knowledge and skills and who has the affirmative duty under Wis. Stat. § 448.30 both to determine what a reasonable patient in the position of Ms. Brown would want to know and to provide that material information. The informed consent statute speaks solely in terms of the doctor's duty to disclose and discuss information related to treatment options and risks. The informed consent statute recognizes that a patient is not in a position to know treatment options and risks and, if unaided, is unable to make an informed decision.

¶ 52. For these reasons, we conclude that as a general rule a jury should not be instructed that a patient can be found contributorily negligent for failing to ask questions or for failing to undertake independent research. A patient's duty to exercise ordinary care generally does not encompass a duty to ascertain the truth or the completeness of the information presented by a doctor. Requiring patients either to ask questions or to independently seek information would erode a doctor's duty to obtain informed consent.

¶ 53. We do not conclude, however, that a patient may never be contributorily negligent for failing to seek information. It would, however, require a very extraordinary fact situation to render a patient contributorily negligent when the patient accepts and trusts the information a doctor provides, because ordinarily a patient may rely on the knowledge and skills of

a doctor. The evidence does not place the present case in the realm of the extraordinary.

(3)

¶ 54. The defendants urge that a patient's duty to exercise ordinary care in an informed consent action requires that a patient make a reasonable choice among the alternative viable medical modes of treatment presented by a doctor. According to the defendants, a jury may find a patient contributorily negligent for choosing a viable mode of treatment presented by a doctor when that treatment contravenes the patient's concerns.

¶ 55. In this case, the defendants argue that Ms. Brown was presented with two viable medical modes of treatment: surgery or periodic mammograms. The surgery was highly disfiguring; periodic mammograms would involve no disfigurement. Thus the defendants contend that Ms. Brown was contributorily negligent for proceeding with bilateral mastectomies, the most disfiguring and cosmetically displeasing treatment alternative, when she was very concerned about her appearance and placed tremendous importance on the size and shape of her breasts. According to the defendants, the jury could have concluded that, on these facts, Ms. Brown's choice of surgery constituted contributory negligence.

¶ 56. The plaintiffs respond that a patient cannot be held contributorily negligent simply for consenting to a viable medical mode of treatment presented by a doctor. They argue that the focus in an informed consent action is on a doctor's failure to provide the information that would permit a patient to choose among the viable medical modes of treatment and that a patient cannot, as a matter of law, be negligent for

choosing a mode of medical treatment presented by a doctor as viable.

¶ 57. We agree with the plaintiffs and hold, as did the court of appeals, that except in a very extraordinary fact situation, a patient is not contributorily negligent for choosing a viable medical mode of treatment presented by a doctor. *See Brown*, 220 Wis. 2d at 206–7. The .evidence does not place this case in the realm of the extraordinary.

### III

¶ 58. The plaintiffs assert that the court of appeals erred in holding that the circuit court should have given jury instructions on defenses asserted by the defendants. The circuit court refused to grant the defendants' requests for the following two jury instructions: (1) a jury instruction on the provisions of Wis. Stat. § 448.30 that relieve a doctor of the duty to inform the patient of certain information; and (2) a jury instruction consisting of the optional fourth paragraph of the pattern jury instruction on informed consent, Wis JI—Civil § 1023.2.

¶ 59. The plaintiffs contend that the circuit court correctly refused to instruct the jury on these defenses because no evidence was presented at trial that raised these defenses. They further contend that the court of appeals erred in ordering a new trial on the ground that it was prejudicial error for the circuit court to refuse to give these jury instructions.

¶ 60. The court of appeals explained its holding on the jury instruction issue as follows:

> We conclude that the court should have instructed
> the jury on the applicable exceptions to Dr. Dibbell's

informed consent duty because the jury was probably misled as to the scope of the doctor's duty under the informed consent statute. Specifically, the jury should have been charged with both the fourth paragraph of Wis. JI-Civil 1023.2 and the appropriate statutory exceptions under § 448.30, Stats., because neither necessarily subsumes the other. The record demonstrates that Dibbell put forth evidence explaining why he declined to provide certain information to Brown.

*Brown*, 220 Wis. 2d at 211–12.

¶ 61. The ultimate resolution of whether a particular instruction is appropriate turns on a review of the evidence. *Johnson v. State*, 85 Wis. 2d 22, 28, 270 N.W.2d 153 (1978). Accordingly, this court has held it to be error for a circuit court to refuse to instruct the jury on an issue that the evidence has raised, as well as for a circuit court to instruct on an issue that the evidence has not raised. *D.L. v. Huebner*, 110 Wis. 2d 581, 624, 329 N.W.2d 890 (1983). However, where an instruction is erroneous and tends to mislead or probably misleads the jury, such misstatement of the law constitutes prejudicial error. *Leahy v. Kenosha Memorial Hosp.*, 118 Wis. 2d 441, 452, 348 N.W.2d 607 (Ct. App. 1984).

¶ 62. We therefore review the record in this case to determine whether these two requested jury instructions correctly state the law and whether evidence was introduced that would warrant the instructions requested by the defendants. *See Huebner*, 110 Wis. 2d at 624.

¶ 63. Wisconsin Stat. § 448.30 sets forth six types of information that a doctor does not have the duty to

disclose to a patient. The defendants assert that the jury should have been instructed that Dr. Dibbell was not required to disclose the following four types of information set forth in the statute. Their proposed jury instruction read as follows:

> The physician's duty to inform the patient. . .does not require disclosure of:
>
> (1) Information beyond what a reasonably well qualified physician in a similar medical classification would know;
>
> (2) Detailed technical information that in all probability a patient would not understand;
>
> (3) Risks apparent or known to the patient;
>
> (4) Extremely remote possibilities that might falsely or detrimentally alarm the patient.

¶ 64. This requested jury instruction correctly states the law; it repeats verbatim four of the express exceptions to disclosure listed in Wis. Stat. § 448.30. The circuit court rejected these proposed jury instructions on the ground that none of the statutory exceptions would apply to the facts as presented at trial.

¶ 65. At trial, Dr. Dibbell and other doctors testified that they did not provide Ms. Brown with statistical information on her risk of developing cancer because this information is confusing and misleading to patients. The defendants contend that Dr. Dibbell presented an arguably reasonable explanation for his failure to disclose such statistics to Ms. Brown and that this evidence was sufficient for the circuit court to give the jury the requested statutory instruction that a doctor need not disclose detailed technical information that a patient would not likely understand.

¶ 66. Further, Dr. Dibbell testified at trial that the description he gave Ms. Brown of the mastectomy procedure—removal of all breast tissue, the nipple and part of the areola—would convey to her that breast sensation would be diminished. According to the defendants, Ms. Brown must have been aware that she would suffer diminished breast sensation because after the surgery virtually none of her breast tissue would remain.

¶ 67. We hold, as did the court of appeals, that the defense that the risk was apparent or known to Ms. Brown is a defense the jury could consider. As discussed previously, the plaintiffs assert that Dr. Dibbell had failed in his duty of disclosure by not advising Ms. Brown that after undergoing bilateral mastectomies she would have diminished breast sensation. We hold, as did the court of appeals, that the evidence raised the issue of whether this was a risk apparent or known to Ms. Brown. *See* Wis. Stat. § 448.30(3). We hold, as did the court of appeals, that the circuit court erred in not instructing the jury on one or more of the statutory defenses requested by the defendants and that this error was prejudicial because the jury was probably misled about the scope of the defendants' duty under the informed consent statute.

¶ 68. At the close of evidence at trial, the defendants also asked the circuit court to include in the jury instructions the optional fourth paragraph of the standard Wisconsin informed consent instruction, Wis JI—Civil § 1023.2. This paragraph explains that a doctor may be justified in failing to make disclosures to a patient and reads as follows:

> If the doctor comes forward and offers to you an explanation as to why the doctor did not make a

56

particular disclosure or disclosures to the plaintiff, and if such explanation satisfies you that it was reasonable for the doctor not to have made such disclosures, then you will find that the defendant did not fail in the duties owed by the doctor to the patient.

¶ 69. The plaintiffs appear to contend that the six statutory exceptions listed in Wis. Stat. § 448.30 are the only explanations a doctor may offer for not disclosing information to a patient and therefore the optional fourth paragraph should not have been given.

¶ 70. The defendants assert that an instruction on a non-statutory defense should have been given in this case. They point out, for example, that the jury could have found that Dr. Dibbell's explanation of his failure to provide Ms. Brown with statistical information on her risk of developing breast cancer because the information would be misleading and confusing was a reasonable explanation for nondisclosure from the perspective of a patient, even if this court were to conclude that the explanation does not fit within the express exceptions set forth in Wis. Stat. § 448.30.

¶ 71. The duty to disclose varies from case to case and "defies simple definition," *Johnson*, 199 Wis. 2d at 639; correspondingly, defenses may also vary. We are therefore unwilling to hold that the legislature intended to categorically limit the defenses available to a doctor to those set forth in Wis. Stat. § 448.30. A circuit court should, however, be cautious about instructing on defenses beyond those the legislature has expressly provided. It should give the jury an instruction on defenses in addition to or in lieu of the statutory provisions only when evidence of a specific explanation for nondisclosure has been offered at trial

and should craft the jury instruction to fit the evidence presented and the rule of law described below.

¶ 72. The plaintiffs also argue that the optional fourth paragraph of Wis JI—Civil § 1023.2 is a misleading statement of the law of informed consent. Specifically, they contend that the fourth paragraph is misleading because it allows a jury to excuse a doctor's breach of the duty to disclose if the doctor provides any explanation that the jury considers reasonable.

¶ 73. We agree with the plaintiffs that the optional fourth paragraph of Wis JI—Civil § 1023.2 is misleading. The instruction does not make clear, as it should, that the reasonableness of a doctor's explanation for failure to disclose information must be measured from the perspective of what a reasonable person in the patient's position would want to know. A doctor has an affirmative duty to disclose information that a reasonable person in the patient's position would want to know.[15]

¶ 74. In other words, the optional fourth paragraph is misleading because it can be construed as stating that the question of a doctor's failure to disclose information is to be answered from the doctor's perspective. The paragraph states that "if such explanation [provided by the doctor] satisfies you that it was reasonable for the doctor not to have made such disclosures, you will find that the defendant did not fail in the duties owed by the doctor to the patient." Wis JI—Civil § 1023.2. Determining the reasonableness of the nondisclosure from the perspective of what a doctor believes should be disclosed, instead of what a reasona-

---

[15] *Schreiber v. Physicians Ins. Co.*, 223 Wis. 2d 417, 427, 588 N.W.2d 26 (1999); *Johnson*, 199 Wis. 2d at 632; *Martin*, 192 Wis. 2d at 174; *Scaria*, 68 Wis. 2d at 12–13.

ble patient wants to know, is an erroneous statement of the law of informed consent.

¶ 75. An instruction should make clear that for a jury to find that a doctor did not fail in the duty of disclosure owed by the doctor to the patient, a doctor must satisfy the jury that a reasonable patient under the circumstances then existing would not want to know the information the doctor failed to disclose.

¶ 76. In summary, we agree with the defendants, as did the court of appeals, that the circuit court erred in refusing to grant the defendants' motion to instruct the jury about defenses set forth in Wis. Stat. § 448.30, when evidence suggesting such defenses was presented. We also conclude that the language of the optional fourth paragraph of the informed consent jury instruction, Wis JI—Civil § 1023.2, is misleading and should not have been given in the form proposed by the defendants.

¶ 77. For the reasons set forth, we affirm the decision of the court of appeals and remand the cause for a new trial.

*By the Court.*—The decision of the court of appeals is affirmed.