¶ 44.
PATIENCE DRAKE ROGGENSACK, C.J.
{dissenting). This review arises from an unpublished decision of the court of appeals[1] reversing the circuit court's decision, which affirmed the Labor and Indus *599 try Review Commission's (LIRC) order denying Trade Flug (Flug) disability benefits under Wis. Stat. § 102.42(lm).
¶ 45. I condude that Flug, who has sustained a compensable (work-related) injury from which began a continuing course of pain and who underwent surgery upon the advice of her medical doctor to alleviate that pain, is entitled to compensation pursuant to Wis. Stat. § 102.42(lm) if she accepted the physician's advice and undertook surgery with the good faith belief that surgery would treat her work-related injury, even though surgery was unnecessary treatment for that injury. Neither LIRC nor the Administrative Law Judge (ALJ) made factual findings in regard to Flug's good faith belief, or the lack thereof, in undertaking surgery. Therefore, I would remand the matter to LIRC to make the requisite finding and complete its obligations under § 102.42(lm).
¶ 46. Accordingly, I would affirm the court of appeals' decision reversing LIRC and remanding the matter for additional fact-finding on the issue of good faith, and if necessary for a determination of the damages to which Flug is entitled. Because the majority opinion fails to recognize the factual nature of good faith, its importance to the plain meaning of Wis. Stat. § 102.42(lm) and avoids addressing good faith in the context in which it arises, I respectfully dissent from the majority opinion.
I. BACKGROUND
f 47. The majority opinion ably sets forth the underlying facts. Therefore, I shall relate only those facts necessary to attune the reader to the discussion that follows.
*600 f 48. On February 14, 2013, while engaged in work for Wal-Mart, Flug felt a sudden pain in her neck that radiated down her right arm. She had not experienced pain before this incident. Because the pain continued, on February 20, 2013, she sought medical treatment from Dr. Sabina Morissette. Dr. Morissette diagnosed Flug with "[r]ight arm and shoulder strain with possible relation to the cervical spine itself." Dr. Morissette released Flug back to work, with restrictions on the tasks she could perform.
¶ 49. Because the pain continued, on February 25, 2013, Flug sought physical therapy from Debra Stow. Stow's records show:
[Flug] presents with the diagnosis of right shoulder pain. Patient stated that on Thursday, February 14 she started work without any pain.... When she woke up Friday morning she had a lot of really intense pain and had to leave work early. . . . [T]he pain starts in her neck and goes down the back portion of her shoulder down into her arm.
¶ 50. On March 6, 2013, Flug saw Dr. Andrew Floren. Dr. Floren noted that Flug "was doing a good deal of overhead work scanning some boxes in the Shoes Department. She developed a severe sudden pain in her right upper back area. This pain went down the posterior shoulder and arm to the wrists." On March 22, 2013, Floren's notes indicate that Flug's neck and back were slowly getting better, but the pain in her shoulder was not improving. In addition, she had begun to have numbness in her right hand and fingers.
¶ 51. On April 2, 2013, Flug had a follow-up appointment with Dr. Floren and said that her pain was not improving. Floren recommended a steroid injection, which Flug had. However, it did not alleviate her pain.
*601 ¶ 52. Because of the continuing pain, on May 2, 2013, Floren referred Flug to Dr. Eduardo Perez, a neurosurgeon. Dr. Perez recommended surgery to alleviate her pain. Specifically, Dr. Perez recommended Flug undergo an "anterior cervical dis[c]ectomy with fusion/fixation at the C5-C6, C6-C7 levels." Dr. Perez stated: "given time and overall severity of the symptoms and the lack of response to nonsurgical management make [Flug] a surgical candidate."
f 53. On June 4, 2013, Dr. Perez performed a discectomy. At a follow-up approximately one month after the surgery, Flug told Dr. Perez that she was "doing excellent" and almost back to full health. Dr. Floren allowed Flug to return to work on July 17, 2013, but gave her a twenty-pound lifting restriction. Eventually, that restriction was increased to thirty-pounds before being eliminated entirely in November 2013.
| 54. Initially, Wal-Mart paid Flug worker's compensation disability benefits. However, subsequent to Flug's surgery, Wal-Mart retained its own physician, Dr. Morris Soriano, to conduct an independent review of Flug's medical records. Dr. Soriano concluded that the surgery was not necessary to treat Flug's work-related injury. Based on these findings, Wal-Mart notified Flug that it was terminating her disability benefits as of June 22, 2013.
¶ 55. On August 16, 2013, Flug filed a worker's compensation claim against Wal-Mart with the Department of Workforce Development. Flug sought disability benefits through August 8, 2013, including benefits related to the surgery, as well as 22% permanent partial disability benefits and medical expenses.
¶ 56. Flug submitted a "Practitioner's Report on Accident or Industrial Disease in Lieu of Testimony" signed by Dr. Floren. Dr. Floren opined that given the *602 sudden onset of Flug's symptoms while at work, it was "medically probable" that the work-related injury caused a cervical disability, which required the recommended surgery to eliminate her pain. In contrast, Dr. Soriano opined that Flug's discectomy was "not reasonable, necessary or related to the injury of February 14, 2013." Flug did not have Dr. Soriano's opinion prior to undertaking surgery.
¶ 57. Flug was the only witness to testify in-person at the hearing. She testified that she felt a "[plain, instant pain, just shooting down from my neck down into my shoulder and into my arm" while scanning a box above her head. She further testified that she believed all of the medical treatment she subsequently received was necessary to relieve the continuing pain she sustained due to the work-related injury.
f 58. The ALJ reasoned that the medical history provided by Flug to Dr. Floren was inconsistent, and therefore, the ALJ discounted his testimony. As a result, the ALJ denied Flug's application for disability benefits.
f 59. LIRC adopted the factual findings of the ALJ. However, contrary to what the ALJ had found, LIRC then concluded that Wis. Stat. § 102.42(lm) did not apply to Flug's claims because she had not suffered a compensable work-related injury. The circuit court affirmed LIRC.
¶ 60. Before the court of appeals, LIRC argued that Wis. Stat. § 102.42(lm) requires a causal link between an employee's compensable injury and his or her invasive treatment. The court of appeals reasoned that LIRC, by requiring "that an employee must show his or her treatment was the result of a compensable injury, the Commission reads an additional causation *603 requirement into the statute."[2] Therefore, the court of appeals concluded that LIRC's interpretation of the statute was unreasonable. We granted review. I would affirm the court of appeals.
II. DISCUSSION
A. Standard of Review
¶ 61. "When reviewing a worker's compensation claim, we review LIRC's decision, not the decisions of the circuit court or court of appeals." DeBoer Transp., Inc. v. Swenson, 2011 WI 64, ¶ 29, 335 Wis. 2d 599, 804 N.W.2d 658 (citing Cty. of Dane v. LIRC, 2009 WI 9, ¶ 14, 315 Wis. 2d 293, 759 N.W.2d 571).
¶ 62. This appeal turns on the interpretation of Wis. Stat. § 102.42(lm). The interpretation of a statute presents a question of law that we generally review independently. Cty. of Dane, 315 Wis. 2d 293, ¶ 14 (citing Watton v. Hegerty, 2008 WI 74, ¶ 6, 311 Wis. 2d 52, 751 N.W.2d 369).
¶ 63. There are times when an agency's interpretation of a statute is entitled to deference. Id. (citing Clean Wis., Inc. v. Pub. Serv. Comm 'n of Wis., 2005 WI 93, ¶ 37, 282 Wis. 2d 250, 700 N.W.2d 768). However, in the present case, LIRC did not interpret Wis. Stat. § 102.42(lm). Instead of construing the statute, LIRC said that Flug "failed to present credible medical evidence to establish that she suffered a work-related injury because the history upon which Dr. Floren relied when making his determination as to whether the incident on February 14, 2013, resulted in a work *604 injury was incorrect."[3] Accordingly, there is no statutory interpretation by LIRC to which deferral could apply.
f 64. Except in very limited circumstances not present in the case now before us, we accept LIRC's factual findings as conclusive. Wis. Stat. § 102.23(l)(a)l. However, neither LIRC nor the ALJ made a factual finding in regard to whether Flug had a good faith belief that surgery would treat her work-related injury.
¶ 65. Accordingly, I interpret and apply Wis. Stat. § 102.42(lm) under well-established principles of statutory interpretation. And, as did the court of appeals, I make no factual findings, but refer the lack of a finding in regard to whether Flug had a good faith belief that undertaking surgery would treat her work-related injury to LIRC so that it can complete its obligations under § 102.42(lm).
B. Statutory Interpretation, General Principles
¶ 66. "It is, of course, a solemn obligation of the judiciary to faithfully give effect to the laws enacted by the legislature, and to do so requires a determination of statutory meaning." State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 681 N.W.2d 110. For this reason, "statutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.' " Id., ¶ 45 (quoting Seider v. O'Connell, 2000 WI 76, ¶ 43, 236 Wis. 2d 211, 612 N.W.2d 659). "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially- *605 defined words or phrases are given their technical or special definitional meaning." Id. (citing Bruno v. Milwaukee Cty., 2003 WI 28, ¶¶ 8, 20, 260 Wis. 2d 633, 660 N.W.2d 656).
¶ 67. Additionally, "[c]ontext is important to meaning." Id., ¶ 46. As a result, "statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." Id. And, if "statutory language is unambiguous, there is no need to consult extrinsic sources of interpretation, such as legislative history." Id. (citing Bruno, 260 Wis. 2d 633, ¶ 7).
¶ 68. It is under these principles that I interpret Wis. Stat. § 102.42(lm).
C. Interpretation of Wis. Stat. § 102.42(lm)
¶ 69. "A purpose of the worker's compensation statute is to 'provide prompt justice for injured workers and to prevent, as far as possible, the delays that might arise from protracted litigation.' " Cty. of Dane, 315 Wis. 2d 293, ¶ 34 (quoting Bosco v. LIRC, 2004 WI 77, ¶ 48, 272 Wis. 2d 586, 681 N.W.2d 157). And, "an injured employee is guaranteed 'recovery irrespective of his own fault and irrespective of the employer's absence of fault.'" Id. (quoting Mulder v. Acme-Cleveland Corp., 95 Wis. 2d 173, 180, 290 N.W.2d 276 (1980)). "However, in exchange for this guarantee, the employee is obliged to accept a limited and scheduled compensation award." Id. (internal quotations omitted). "As a result, the statute must be broadly construed in order to best promote its statutory purposes." Id. (citation omitted); see also Johnson v. Wis. Lumber *606 & Supply Co., 2003 Wis. 304, 310, 234 N.W.2d 506 (1931) ("It has been said over and over again in workmen's compensation cases that the act should be liberally construed . . .
I 70. As part of Wisconsin's worker's compensation scheme, employers[4] are required to compensate employees for certain injuries when "the employee is performing service growing out of and incidental to his or her employment." Wis. Stat. § 102.03(l)(c)l. And, under Wis. Stat. § 102.42(1), an "employer shall supply such medical, surgical, chiropractic, psychological, po-diatric, dental, and hospital treatment, medicines, medical and surgical supplies, crutches, artificial members, appliances, and training in the use of artificial members and appliances . . . medicines, and medical supplies, as may be reasonably required to cure and relieve from the effects of the injury." § 102.42(1).
¶ 71. In addition to the obligation to pay certain medical expenses, an employer also may be liable for disability indemnity if an employee becomes disabled as a result of an injury or treatment for the effects of an injury. Under certain circumstances, the employer's obligation includes payment for unnecessary, invasive medical treatment that causes an employee to become disabled. See, e.g., Wis. Stat. § 102.42(lm).
f 72. Wisconsin Stat. § 102.42(lm) renders an employer liable for disability indemnity when an employee undergoes invasive treatment that is later dis *607 covered to have been unnecessary to treat the work-related injury. Section 102.42(lm) provides, in relevant part:
Liability for unnecessary treatment. If an employee who has sustained a compensable injury undertakes in good faith invasive treatment that is generally medically acceptable, but that is unnecessary, the employer shall pay disability indemnity for all disability incurred as a result of that treatment. An employer is not liable for disability indemnity for any disability incurred as a result of any unnecessary treatment undertaken in good faith that is noninvasive or not medically acceptable.
¶ 73. To receive disability indemnity from his or her employer under Wis. Stat. § 102.42(lm), an employee must meet a number of statutory criteria: (1) a compensable (work-related) injury; (2) good faith in undertaking invasive medical treatment; (3) medically acceptable treatment that is unnecessary for the work-related injury; (4) disability incurred because of the treatment. § 102.42(lm).
f 74. Here, LIRC does not dispute that Flug suffered a compensable injury, even though it did so in the opinion we review. "Injury" is defined by Wis. Stat. § 102.01(c), in relevant part, as any "mental or physical harm to an employee caused by accident or disease." And the types of injuries for which an employer is liable are enumerated in Wis. Stat. § 102.03.
f 75. Good faith is the touchstone of a plain meaning interpretation of Wis. Stat. § 102.42(lm). Stated more completely, whether the employee undertakes invasive treatment with the good faith belief that it would treat her work-related injury is a central focus of § 102.42(lm).
*608 ¶ 76. Good faith is a state-of-mind question; accordingly, whether one has acted in good faith is a question of fact. Schmitz v. Firstar Bank of Milwaukee, 2003 WI 21, ¶ 34, 260 Wis. 2d 24, 658 N.W.2d 442 ("the question of whether Firstar acted in good faith or in accordance with reasonable commercial standards under Wis. Stat. § 403.419(3) (1993-94) was a question of fact that would need to be tried"); Tang v. C.A.R.S. Protection Plus, Inc., 2007 WI App 134, ¶ 41, 301 Wis. 2d 752, 734 N.W.2d 169 ("Whether a party to a contract has breached its implied duty of good faith is a question of fact.").
¶ 77. Good faith is not defined in Wis. Stat. § 102.42. Therefore, we apply its ordinary meaning such as may be found in a dictionary. Kalal, 271 Wis. 2d 633, ¶ 53. The current version of Black's Law Dictionary defines good faith, in part, as "[a] state of mind consisting in . . . honesty in belief or purpose." Good Faith, Black's Law Dictionary 808 (10th ed. 2014). Accordingly, an employee must act with an honest "belief or purpose" in order to act with good faith.
¶ 78. The legislature has tied the employee's good faith obligation to the employee's undertaking invasive treatment because good faith modifies the verb "undertakes" pursuant to the plain meaning of the terms employed in Wis. Stat. § 102.42(lm). ("If an employee . . . undertakes in good faith invasive treatment.")
¶ 79. Moreover, the employee's treatment must be generally medically acceptable, but unnecessary to treat a compensable work-related injury. Wisconsin Stat. § 102.42(lm) does not mandate that the treat *609 ment be unnecessary for any medical reason; it requires only that it be unnecessary to treat a compensable injury.
¶ 80. Finally, the employee must show that the invasive treatment resulted in the employee's disability. This is the only aspect of Wis. Stat. § 102.42(lm) that requires an employee to show causation.
f 81. The terms of Wis. Stat. § 102.42(lm) must be read in context. The obligation for the employee to act with a good faith belief that the invasive treatment is treatment for her work-related injury limits the employee's treatment choices and in so doing, protects the employer. However, as long as an employee acts with a good faith belief that undertaking medically invasive treatment will treat her work-related injury, the employer is liable for disability even when the treatment was medically unnecessary to treat a work-related injury. This good faith obligation protects employers from an employee seeking medical treatment that the employee knows is unnecessary to treat a compensable injury.
¶ 82. Importantly, all Wis. Stat. § 102.42(lm) requires is that an employee act with a good faith belief that undertaking invasive treatment is treatment for her work-related injury. Nothing in the plain language of the statute can reasonably be construed as requiring the employee to know that medical advice for invasive treatment should not be taken.
¶ 83. Nevertheless, LIRC and the majority opinion[5] contend that the work-related injury must be medically connected to the employee's invasive treat *610 ment that resulted in disability. According to the majority opinion and LIRC, without that direct connection, Wis. Stat. § 102.42(lm) does not apply. Their narrow statutory interpretation gives the employee the burden to know whether the medical treatment that was recommended by treating physicians to alleviate on-going pain should be accepted or rejected.
¶ 84. The majority opinion's statutory interpretation reads good faith out of the statute in the context of the employee who undertakes invasive, unnecessary treatment with a good faith belief that the compensatory injury is being treated. For example, the majority opinion repeatedly substitutes an ellipsis for the words "good faith" when it quotes portions of the statute, as it makes what it believes are winning statutory constructs.[6] Furthermore, when the majority opinion finally gets around to addressing good faith it says, "If the disability-creating treatment turns out not to have been necessary to treat her compensable injury, she still receives disability benefits so long as she undertook the treatment in good faith."[7] The majority opinion then continues to avoid the central issue of the employee's good faith by saying, "We need not explore this concept further because we have already concluded Ms. Flug's treatment does not qualify under the statute's extension of liability."[8] Is this because the majority opinion's reasoning requires that the work-related injury caused the treatment? The majority opinion would permit recovery under Wis. Stat. § 102.42(lm) only for invasive treatment directed solely at the compensable injury. What then of the context in which an employee who in good faith be *611 lieved that the invasive treatment she undertook would treat her compensable injury?
¶ 85. While the majority opinion's grammatical arguments are interesting, they do not explain why the legislature did not include a provision requiring the employee to show that the work-related injury caused the treatment, if the legislature had wanted to include that requirement. See Kalal, 271 Wis. 2d 633, ¶ 44 ("We assume that the legislature's intent is expressed in the statutory language."); cf. Ott v. Peppertree Resort Villas, Inc., 2006 WI App 77, ¶ 25 n.11, 292 Wis. 2d 173, 716 N.W.2d 127 ("We are not permitted to re-write the statute, however, and we conclude the difference in language the legislature chose to use in the two subsections supports our conclusion that it did not intend to impose the causation-of-pecuniary-loss requirement on private plaintiffs who bring a claim under [Wis. Stat.] § 707.57(1)."). It chose not to do so.
¶ 86. In addition, requiring an employee show the work-related injury caused the invasive treatment would lead to unreasonable results. See Kalal, 2004 WI 58, ¶ 46 (we interpret statutes in such a way as "to avoid absurd or unreasonable results"). It would force an employee to know, at the time of an invasive treatment whether the invasive treatment she is undertaking is to alleviate pain from a compensable injury or, whether it would alleviate pain from a pre-existing injury or both. But see Brown v. Dibbell, 227 Wis. 2d 28, 51, 595 N.W.2d 358 (1999) (reasoning, "a patient is not in a position to know treatment options and risks and, if unaided, is unable to make an informed decision").
¶ 87. We do not expect lay people to have knowledge of when medical practices or procedures should be employed. See generally Martin v. Richards, 192 *612 Wis. 2d 156, 170, 531 N.W.2d 70 (1995) ("The average patient has little or no understanding of the medical arts, and ordinarily has only his physician to whom he can look for enlightenment with which to reach an intelligent decision." (quoting Canterbury v. Spence, 464 F.2d 772, 780 (D.C. Cir. 1972))). For this reason, an interpretation of Wis. Stat. § 102.42(lm) that presumes an employee is capable of possessing such knowledge is unreasonable. Cf. Hanson v. Am. Family Mut. Ins. Co., 2006 WI 97, ¶ 20, 294 Wis. 2d 149, 716 N.W.2d 866 (reasoning, "when a tortfeasor causes an injury to another person who then undergoes unnecessary medical treatment of those injuries despite having exercised ordinary care in selecting her doctor, the tortfeasor is responsible for all of that person's damages arising from any mistaken or unnecessary surgery").
¶ 88. Our decision in Spencer v. DILHR, 55 Wis. 2d 525, 200 N.W.2d 611 (1972), illustrates this principle.[9] In Spencer, we held that an employee is not "to be faulted because he chose to follow erroneous medical advice ... as long as he did so in good faith." Id. at 532. Spencer was predicated on good faith; and based on good faith, we concluded it was eminently reasonable for an employee to rely on the advice of a physician when deciding whether to undergo invasive *613 treatment. Id. ("There is no evidence to show that in accepting arthrodesis Spencer did so other than in good faith. The employer is responsible for the consequences not only of the injury, but the treatment."); see also Honthaners Restaurants, Inc. v. LIRC, 2000 WI App 273, ¶ 15, 240 Wis. 2d 234, 621 N.W.2d 660 ("In Spencer, the supreme court allowed recovery for medical treatment and expenses that were incurred when the injured employee followed what, in hindsight, appeared to be erroneous medical advice. Spencer teaches that as long as the claimant engaged in the unnecessary and unreasonable treatment in good faith, the employer is responsible for payment." (internal citations omitted)).
f 89. Accordingly, all that Wis. Stat. § 102.42(lm) requires the employee to prove in order to come within the statutory provisions is that at the time when the employee undertakes an invasive procedure he or she had a good faith belief that the procedure would treat a compensable injury and that the invasive treatment resulted in a disability. The employee need not show that the compensable work injury caused the employee to undergo invasive treatment.
D. Application
¶ 90. In the present case, Flug provided proof to the ALJ in the form of Dr. Floren's written report and she testified. Dr. Floren was one of her treating physicians. Wal-Mart provided the report of Dr. Soriano, who did not review Flug's medical records until after she had surgery.
¶ 91. It is undisputed that Flug suffered a com-pensable injury and underwent an invasive treatment, a discectomy. It is also undisputed that she did not *614 have pain prior to the work-related injury on February 14, 2013. Furthermore, it is undisputed that her pain continued as she went from health care provider to health care provider in search of effective treatment for pain and the pain continued until after she underwent a discectomy on June 4, 2013.
¶ 92. Dr. Soriano's report opines that surgery was unnecessary to treat her work-related injury. However, Flug did not have the benefit of his opinion at the time she undertook invasive treatment. Finally, it is undisputed that Flug's unnecessary treatment caused the disability for which she now seeks benefits.
f 93. Moreover, Dr. Soriano's opinion that the work-related injury did not necessitate invasive treatment is of no relevance. Dr. Soriano's opinion speaks to whether the need for invasive treatment was caused by her work-related injury. However, Dr. Soriano gave his opinion after Flug's surgery.
f 94. Post-hoc examinations like Dr. Soriano's are not relevant when determining whether Flug acted with a good faith belief at the time she undertook surgery that it would alleviate the pain she had suffered since her work-related injury on February 14, 2013. Flug's good faith belief is her state of mind at the moment when she undertook the invasive treatment. And, it is her state of mind at the time she undertook surgery that the majority opinion avoids discussing.
¶ 95. In sum, Flug satisfied most of Wis. Stat. § 102.42(lm)'s criteria. She sustained a compensable (work-related) injury. Based on medical advice to treat pain, she underwent a discectomy, an invasive and medically acceptable treatment that was unnecessary to treat her work-related injury. And, she sustained a disability as a result of the surgery. If she undertook the discectomy with the good faith belief that it would *615 treat her work-related injury, Wis. Stat. § 102.42(lm) requires nothing more. However, as I explained above, good faith is a fact question that appellate courts do not decide. Accordingly, a remand to LIRC is necessary.
III. CONCLUSION
¶ 96. I conclude that Flug, who has sustained a compensable (work-related) injury from which began a continuing course of pain and who underwent surgery upon the advice of medical doctors to alleviate that pain, is entitled to compensation pursuant to Wis. Stat. § 102.42(lm) if she accepted the physician's advice and undertook surgery with the good faith belief that surgery would treat her work-related injury, even though surgery was unnecessary treatment for that injury. Neither LIRC nor the ALJ made factual findings in regard to Flug's good faith belief, or the lack thereof, in undertaking surgery. Therefore, I would remand the matter to LIRC to make the requisite finding and complete its obligations under § 102.42(lm).
¶ 97. Accordingly, I would affirm the court of appeals' decision reversing LIRC and remanding the matter for additional fact-finding on the issue of good faith, and if necessary for a determination of the damages to which Flug is entitled. Because the majority opinion fails to recognize the factual nature of good faith, its importance to the plain meaning of Wis. Stat. § 102.42(lm) and avoids addressing good faith in the context in which it arises, I respectfully dissent from the majority opinion.

 Flug v. LIRC, No. 2015AP1989, unpublished slip op. (Wis. Ct. App. June 21, 2016).

 Flug v. LIRC, No. 2015AP1989, unpublished slip op. (Wis. Ct. App. June 21, 2016).

 Trade Flug v. Wal-Mart Assoc., Inc., ERD No. 2013-006010 (LIRC, Feb. 23, 2015).

 Employer is defined by Wis. Stat. § 102.04 and includes, in relevant part, any "person who usually employs 3 or more employees for services performed in this state, whether in one or more trades, businesses, professions, or occupations, and whether in one or more locations." Wis. Stat. § 102.04(1)(b)1f.

 Majority op. f ¶ 32-33. The statute requires causation only insofar as the invasive treatment must have caused the disability.

 See majority op., ¶¶ 31, 32.

 Majority op., ¶ 37.

 Id

 Spencer v. DILHR, 55 Wis. 2d 525, 200 N.W.2d 611 (1972) predated the passage of Wis. Stat. § 102.42(lm). In Spencer, the employee suffered an injury at work and underwent surgery. Id. at 526-27. After the surgery, the employee suffered a 15% partial permanent disability. Id. The doctor that performed the surgery determined that further treatment was unnecessary. Id. However, the employee saw another physician, who concluded that the employee should undergo another surgery. Id. The subsequent surgery left the employee with partial permanent disability of 40%. Id.