David ZAK and Kim Zak,
Plaintiffs-Respondents-Cross-Appellants,

v.

Jocko ZIFFERBLATT, D.O.,
Infinity Healthcare Physicians, S.C. and
Physicians Insurance Company of Wisconsin,
Inc., Defendants-Appellants-Cross-Respondents,

Scott PERKL, P.A., Michael J. Cotugno, M.D.,
St. Vincent Hospital of the Hospital Sisters of
the Third Order of St. Francis and Wisconsin
Physicians Service Insurance Corp., Defendants,

WISCONSIN PATIENTS COMPENSATION FUND,
Defendant-Cross-Respondent,

SENTRY SELECT INSURANCE COMPANY,
Nominal-Defendant.

Court of Appeals

*No. 2004AP2698. Submitted on briefs January 30, 3006.
—Decided April 11, 2006.*

2006 WI App 79

(Also reported in 715 N.W.2d 739.)

On behalf of the defendants-appellants-cross-respondents, the cause was submitted on the briefs of *Michael B. Van Sicklen, Roberta F. Howell,* and *Michael D. Leffel* of *Foley & Lardner LLP* of Madison.

On behalf of the plaintiffs-respondents-cross-appellants, the cause was submitted on the briefs of *Vincent R. Petrucelli* of *Petrucelli & Petrucelli, P.C.* of Iron River, Michigan.

On behalf of the defendant-cross-respondent, the cause was submitted on the brief of *Steven P. Means, Roisin H. Bell* and *Michael A. Hughes* of *Michael Best & Friedrich LLP* of Madison.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. CANE, C.J. Jocko Zifferblatt, D.O.; Infinity Healthcare Physicians, S.C.; and Physicians Insurance Company of Wisconsin, Inc. (collectively the healthcare providers) appeal from a judgment of the circuit court, which ordered damages to David and Kim Zak. The

healthcare providers argue the trial court erred when it failed to provide a jury instruction and special verdict question on contributory negligence. They also argue the trial court improperly instructed the jury on causation. Because we hold that the trial court's instructions were not erroneous, we affirm.

¶ 2. The Zaks cross-appeal the judgment of the trial court that reduced the damages awarded pursuant to a statutory cap. The Zaks argue the statutory cap is unconstitutional. We agree and reverse and remand with instructions to reinstate the jury award. The Zaks also argue that a statute that requires payment of future medical expenses awarded to Zak be deposited in an account controlled by the Wisconsin Patients Compensation Fund (the Fund) is unconstitutional. We remand so the parties may comply with the proper procedures for this determination.

## BACKGROUND

¶ 3. David Zak severely burned his right arm at work while repairing a car on April 27, 2000. At 1 a.m. on April 28, he awoke shaking with chills, and he took some over-the-counter medicine and went back to sleep. At 6 a.m., he awoke again with similar symptoms and sought medical attention at St. Vincent's Hospital in Green Bay. At the hospital, Zak was examined by physician's assistant Scott Perkl, and Dr. Jocko Zifferblatt. Zak's wound was treated, and blood was drawn for testing. Zak was discharged with instructions to contact a doctor if he had any new or severe symptoms.

¶ 4. Between 9:30 and 10 p.m. that night, St. Vincent telephoned Zak to tell him that his blood tests were abnormal, and he needed to return to the hospital. Zak was admitted to the hospital at approximately

midnight. It was later discovered that Zak was suffering from severe sepsis, a reaction to a bacterial infection. Due to the sepsis, Zak's bladder was destroyed, which was later reconstructed through surgery, and he suffered other severe medical problems.

¶ 5. The Zaks filed suit against the healthcare providers, claiming that Zak was negligently discharged from the hospital despite evidence of a life threatening infection. At trial, the healthcare providers argued that Zak's condition upon his arrival at the hospital was beyond reprieve, and the administration of antibiotics during Zak's initial visit would not have prevented or reduced Zak's injuries. None of the multiple experts testified that treatment *after* the initial discharge would have prevented or reduced Zak's injuries.

¶ 6. The healthcare providers contended that Zak's failure to quickly seek medical attention after he was notified of his abnormal blood test results and his failure to properly respond to new symptoms after his discharge contributed to his injury. However, the trial judge refused to instruct the jury to consider whether Zak's post-treatment conduct constituted contributory negligence. The court also did not include a contributory negligence question on the special verdict form. When the court instructed the jury, it gave the model jury instruction, which included the legal standard for causation in a medical malpractice case. The jury awarded the Zaks damages.

¶ 7. After the jury's verdict, all parties filed post-trial motions. The healthcare providers argued the court erred when it refused to give a contributory negligence instruction. They also claimed the wording of the causation standard in the jury instruction given was improper. Finally, they moved to reduce the amount of the noneconomic award made to the Zaks pursuant

to the statutory cap. The Zaks contended the statutory cap should not reduce the jury award, and the portion of the jury's award in excess of $100,000 for future medical and hospital expenses should not be paid into a medical expense fund as required by statute.

¶ 8. The court denied the healthcare providers' motions regarding the contributory negligence instruction and the causation issue, but reduced the award pursuant to the cap. It also rejected the Zaks' arguments regarding the statutory damage cap and the medical expense fund. After the court's rulings on the motions, judgment was entered.

## DISCUSSION

## I. The Healthcare Providers' Appeal

*A. Jury Instruction on Contributory Negligence*

¶ 9. The healthcare providers contend the trial court erred when it rejected their request that the special verdict contain a question regarding Zak's contributory negligence and an instruction on contributory negligence. A trial court has wide discretion in framing the special verdict, *Runjo v. St. Paul Fire & Marine Ins. Co.*, 197 Wis. 2d 594, 602, 541 N.W.2d 173 (Ct. App. 1995), and determining what jury instructions to give. *Anderson v. Alfa-Laval Agri, Inc.*, 209 Wis. 2d 337, 344, 564 N.W.2d 788 (Ct. App. 1997). However, both the special verdict and jury instructions given must fully and fairly inform the jury regarding the applicable principles of law. *Runjo*, 197 Wis. 2d at 602; *Anderson*, 209 Wis. 2d at 345. We review independently whether a jury instruction is appropriate under the specific facts

of a given case. *Schwigel v. Kohlmann*, 2005 WI App 44, ¶ 9, 280 Wis. 2d 193, 694 N.W.2d 467.

¶ 10. The healthcare providers argue they were entitled to a contributory negligence jury instruction under *Brown v. Dibbell*, 227 Wis. 2d 28, 595 N.W.2d 358 (1999). In *Brown*, we defined contributory negligence as "conduct by an injured party that falls below the standard to which a reasonably prudent person in that injured party's position should conform for his or her own protection and that is a legally contributing cause of the injured party's harm." *Id.* at 41. "Contributory negligence as a cause-in-fact of injury is judged by the same 'substantial factor' test as a defendant's negligence." *Morgan v. Pennsylvania Gen. Ins. Co.*, 87 Wis. 2d 723, 736, 275 N.W.2d 660 (1979). Under the substantial factor test:

> A plaintiff in a negligence action carries a twofold burden of proving causation. First, the plaintiff has the burden of producing evidence, satisfactory to the judge, from which a jury could reasonably find a causal nexus between the negligent act and the resulting injury. If the plaintiff fails to meet this burden, the plaintiff has failed to establish a prima facie issue of causation and the defendant is entitled to a directed verdict. Second, if the plaintiff meets the burden of production and the causation question is submitted to the jury, the plaintiff has the burden of persuading the jury that the negligence in fact caused the injuries.

*Fischer v. Ganju*, 168 Wis. 2d 834, 857, 485 N.W.2d 10 (1992). In *Connar v. West Shore Equip.*, 68 Wis. 2d 42, 45, 227 N.W.2d 660 (1975), the supreme court stated: "Only one question must be affirmatively answered by the trial judge before submitting a negligence question to the jury: Is there evidence of conduct

which, if believed by the jury, would constitute negligence on the part of the person or other legal entity inquired about." Thus, the healthcare providers assert, a contributory negligence instruction was warranted because a reasonable jury could find that Zak was contributorily negligent based on his conduct following his discharge.

¶ 11. We reject the healthcare providers' argument because no expert evidence was presented that any delay in Zak's return to the hospital contributed to his injury. The healthcare providers note that there was expert testimony that "hours are very crucial" when treating severe sepsis. However, the healthcare providers fail to acknowledge that this statement was in the context of the initial discharge. No expert evidence was presented that, had medical treatment been administered after his initial discharge, Zak's injuries would have been affected. Contributory negligence requires that Zak's conduct must be a "legally contributing cause" of his harm. Here, the healthcare providers failed to present expert evidence that there was a causal nexus between Zak's actions and his injuries. Thus, it was within the trial court's discretion to refuse to give the contributory negligence instruction to the jury.

¶ 12. The healthcare providers counter that requiring them to provide expert testimony on this issue is unsupported by Wisconsin law. Relying primarily on *Ehlinger v. Sipes*, 155 Wis. 2d 1, 454 N.W.2d 754 (1990), they contend there was sufficient evidence for the jury to conclude that Zak's conduct was a substantial factor contributing to his injury. In *Ehlinger*, the parents of premature twins who suffered birth defects brought a negligence claim against their doctors and others, arguing that failing to diagnose the multiple pregnancy

was a substantial factor in the twins' injuries. *Id.* at 5. Our supreme court held that an expert's testimony that an earlier diagnosis could have increased the chance of a full-term pregnancy was sufficient to meet the required burden of production for causation. *See id.* at 20–22. The court noted:

> [T]o require a plaintiff in a case of this type to prove what more probably than not *would* have happened had the defendant not been negligent would require . . . expert testimony by a physician speculating as to the success of a particular treatment, a fact which inherently is incapable of proof to a reasonable certainty . . . . [A]ll that is required is that the plaintiff establish that the proper treatment *could* have lessened or avoided the plaintiff's harm.

*Id.* at 19–22 (emphasis in original).

¶ 13. Here, the healthcare providers err with their suggested application of *Ehlinger* to these facts. They state that the contributory negligence instruction should have been given because, like the parents in *Ehlinger*, they have offered some evidence from which the jury could reasonably infer Zak's conduct was a substantial factor contributing to his injury. Again, the healthcare providers point to expert testimony that hours make a difference when dealing with severe sepsis, and again we note that testimony was in the context of the initial discharge, not the timing of Zak's return to the hospital. The healthcare providers failed to present evidence that Zak's alleged tardiness in seeking additional medical attention after he was initially discharged affected his injury.

*B. Jury Instruction on Causation*

¶ 14. The healthcare providers next contend the trial court improperly instructed the jury on causation.

The court instructed the jury on causation as follows:

> A person's negligence is a cause of a plaintiff's injury if the negligence was a substantial factor in producing the present condition of the plaintiff's health. This question does not ask about the cause but rather a cause. The reason for this is that there can be more than one cause of an injury. The negligence of one or more persons can cause an injury or an injury can be the result of the natural progression of the condition . . . .

> If you conclude from the evidence that the present condition of David Zak's health was caused jointly by either doctor's negligence and also the natural progression of David Zak's condition, then you should find that the doctors' negligence was a cause of David Zak's present condition of health.

Arguing that the term "substantial factor" in the jury instruction was ambiguous, the healthcare providers state, "This instruction allowed the jury to speculate that, even if Dr. Zifferblatt's negligence was less than a substantial cause of Mr. Zak's condition, the jury could find that the doctor caused the injury."

¶ 15. We disagree with the healthcare providers that the causation instruction was improper. First, the trial court's instruction uses equivalent language to the model jury instruction. WI JI—CIVIL 1023 (2004). While the healthcare providers correctly point out that the model jury instructions are not precedential authority, we give them their due weight as persuasive authority. *See Runjo*, 197 Wis. 2d at 604. Further, we simply do not think that substantial factor is a vague term. We are confident that a reasonable person would not understand substantial factor to mean that even if medical negligence was less than a substantial cause of Zak's

condition, the jury could find the doctor caused the injury. That is, a reasonable jury would not interpret "substantial factor" to mean "less than a substantial factor." Also, no Wisconsin case law has held that substantial factor must be defined in any greater detail than the model jury instruction. The meaning that the instruction communicates as a whole was a correct statement of the law.

## II. The Zaks' Cross-appeal

A. *Statutory Cap on Noneconomic Damages*

■

¶ 16. The Zaks contend the trial court erred when it reduced the damages awarded pursuant to Wis. Stat. §§ 655.017 and 893.55(4).[1] The Zaks argue Wisconsin's medical malpractice statutory framework violates their constitutional rights. We review challenges to the constitutionality of a statute without deference to the decision of the circuit court. *State v. Bertrand*, 162 Wis. 2d 411, 415, 469 N.W.2d 873 (Ct. App. 1991).

¶ 17. After the trial court's judgment, this issue was directly addressed by our supreme court in *Ferdon ex rel. Petrucelli v. Wisconsin Patients Comp. Fund*, 2005 WI 125, 284 Wis. 2d 573, 701 N.W.2d 440. In *Ferdon*, a minor, through the minor's guardian ad litem, brought a medical malpractice action against the minor's delivery doctor, hospital and the Wisconsin Patients Compensation Fund for injuries during birth resulting in the minor having a partially paralyzed and deformed right arm. *Id.*, ¶ 2. After a jury awarded $700,000 in noneconomic damages for past and future

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

injuries and $403,000 for future medical expenses, the trial court reduced the award pursuant to the statutory cap. *Id.*, ¶¶ 2, 4. In its opinion, the supreme court wrote, "We hold that the $350,000 cap (adjusted for inflation) on noneconomic medical malpractice damages set forth in Wis. Stat. §§ 655.017 and 893.55(4)(d) violates the equal protection guarantees of the Wisconsin Constitution." *Id.*, ¶ 10. Applying *Ferdon*, the Zaks' constitutional rights were violated when the damages were reduced, and we reverse and remand for further proceedings consistent with our holding.[2]

¶ 18. The healthcare providers argue that *Ferdon* should not be applied retroactively to this case. We reject that argument because the Zaks raised their constitutional challenge in the circuit court and preserved it for appellate review. *See Olson v. Augsberger*, 18 Wis. 2d 197, 201, 118 N.W.2d 194 (1962) (a judgment under attack at the time the controlling decision was rendered is entitled to receive the benefits of the new rule announced in the decision). We are bound by controlling precedent on an issue properly raised in this court. *See Cook v. Cook*, 208 Wis. 2d 166, 190, 560 N.W.2d 246 (1997).

## B. *Future Medical Expenses Fund*

¶ 19. The Zaks also contend the provisions of Wis. Stat. § 655.015, which require that payment of future

---

[2] Like the party challenging the constitutionality of the caps in *Ferdon*, the Zaks make several constitutional arguments beyond equal protection. The supreme court specifically declined to address those other arguments, so we do not address them here. *Ferdon ex rel. Petrucelli v. Wisconsin Patients Comp. Fund*, 2005 WI 125, ¶ 10, 284 Wis. 2d 573, 701 N.W.2d 440.

medical expense payments awarded to Zak in excess of $100,000 be deposited in an account controlled by the Fund, are unconstitutional. Section 655.015 provides:

> If a settlement or judgment under this chapter resulting from an act or omission that occurred on or after May 25, 1995, provides for future medical expense payments in excess of $100,000, that portion of future medical expense payments in excess of an amount equal to $100,000 plus an amount sufficient to pay the costs of collection attributable to the future medical expense payments, including attorney fees reduced to present value, shall be paid into the fund. The commissioner shall develop by rule a system for managing and disbursing those moneys through payments for these expenses, which shall include a provision for the creation of a separate accounting for each claimant's payments and for crediting each claimant's account with a proportionate share of any interest earned by the fund, based on that account's proportionate share of the fund. The commissioner shall promulgate a rule specifying the criteria that shall be used to determine the medical expenses related to the settlement or judgment, taking into consideration developments in the provision of health care. The payments shall be made under the system until either the account is exhausted or the patient dies.

WISCONSIN ADMIN. CODE § INS 17.26 (Oct. 2005) designates proper administration of the accounts.

¶ 20. The healthcare providers contend that the Zaks' challenge to WIS. STAT. § 655.015 and its accompanying rule have been waived because the Zaks failed to follow the procedure for challenging an administrative rule set forth in WIS. STAT. § 227.40. The Fund contends that this court does not have jurisdiction to uphold the Zaks' challenge to the statute due to the Zaks' failure to follow the proper procedure. The Zaks

do not dispute that they failed to follow the proper procedure, but argue waiver on the part of the health-care providers and the Fund when they did not raise this issue before the circuit court made its initial ruling. Again, we turn to *Ferdon*.

■■

¶ 21. In *Ferdon*, the parties also challenged the constitutionality of WIS. STAT. § 655.015 and the administrative rule implementing it. *Ferdon*, 284 Wis. 2d 573, ¶ 12. And, like this case, the parties failed to adhere to the procedures set forth in WIS. STAT. § 227.40. *Id.* The court remanded the question to the circuit court for the parties to comply with § 227.40 and to address the validity of the administrative rule and the constitutionality of the statute and the rule. *Id.* In light of *Ferdon*, we do the same.

*By the Court.*—Judgment affirmed in part; reversed in part; and cause remanded with directions.