Clayton Bray,
Plaintiff-Appellant-Cross-Respondent,

v.

Gateway Insurance Company,
Defendant-Respondent-Cross-Appellant,

USF Holland, Inc., Defendant.

Court of Appeals

*No. 2008AP3223. Submitted on briefs August 10, 2009.
—Decided December 3, 2009.*

2010 WI App 22

(Also reported in 779 N.W.2d 695.)

On behalf of the plaintiff-appellant-cross-respondent, the cause was submitted on the briefs of *Thomas E. Greenwald* of *Oliver, Close, Worden, Winkler & Greenwald LLC*, of Rockford, Illinois.

On behalf of the defendant-respondent-cross-appellant, the cause was submitted on the briefs of *Michael R. Vescio*, of *Smithamundsen LLC*, Milwaukee.

Before Dykman, P.J., Vergeront and Bridge, JJ.

¶ 1. DYKMAN, P.J. Clayton Bray appeals from a damages award in his personal injury action against Gateway Insurance Company following a default judgment in Bray's favor. Bray contends that the trial court erred in excluding some of his claimed damages from the damages award based on its finding that those damages were not caused by the accident in this case. First, Bray argues that the trial court was required to find that the accident caused all of his claimed medical expenses because Gateway stipulated or judicially admitted that those expenses were caused by the accident. Bray then contends that the default judgment established causation as alleged in his complaint and thus the court erred by requiring Bray to prove causation at the damages hearing. Finally, Bray contends that the court's finding that some of his claimed damages were not caused by the accident was clearly erroneous because the only evidence presented at the hearing was that all of Bray's claimed damages were caused by the accident. We reject each of Bray's contentions, and affirm.[1]

---

[1] Gateway cross-appeals from the order granting default judgment to Bray, but writes:

> It should be made clear from the outset that Gateway is not primarily seeking any sort of reversal of the circuit court's decision, but instead primarily asks [for] a complete affirmance of all aspects of the circuit court's decision. In this cross-appeal, Gateway contends only that *if* this matter [is] remanded for further proceedings, those proceedings should involve a jury trial on the merits of all liability and damage issues. If the principal appeal does not succeed in any aspect, then there is no reason to proceed to address the cross-appeal, for the relief requested on cross-appeal is contingent on an already-existing reversal and order for remand.

Because we do not reverse and remand on the appeal, we will not address the cross-appeal.

## Background

¶ 2.    The following facts are taken from the default hearings and materials. On June 7, 2005, an Ace Cab Company taxi driver negligently struck Clayton Bray with his vehicle. The taxi driver was driving within the scope of his employment with Ace Cab, and was therefore covered by Ace Cab's insurer, Gateway Insurance Company.

¶ 3.    In October 2007, Bray sued Gateway for his damages resulting from the Ace Cab taxi driver's negligence. He demanded damages "in excess of $10,000," for medical expenses, past and future lost wages based on his inability to continue his employment as a truck driver, and past and future pain and suffering. Gateway failed to answer, and in February 2008, the trial court entered an order for partial default judgment to Bray "on the issues of liability." The default order states that Bray "is entitled to recover those damages for reasonable compensation for the injuries that he sustained, and will sustain, as a result of the occurrence which is the subject of this action."

¶ 4.    On May 1, 2008, Gateway deposed Bray. Gateway's counsel questioned Bray regarding the earlier deposition of Bray's expert witness, Dr. Stephen Weiss, as follows:

> Q. Had you ever—prior to being involved in this incident, had you ever had low back pain significant enough to require you to seek healthcare treatment?
>
> A. No.
>
> Q. There was a note that was marked Exhibit 1 during Dr. Weiss's deposition earlier today, and I will share that with you, but I'll just read this history. It's dated April 25 of 2007, at HealthSound, where you went for an

outpatient clinical assessment of physical therapy. There's a note that reads, "15 years ago patient had sacroiliac joint problems, which have led to the development of his low back pain . . . . Patient was diagnosed with degenerative dis[c] two years ago."

Does that refresh your recollection about having some low back complaints back in the early '90s?

A. What—it was never back problems in the—it was all, what we thought, was S.I. joint, but never was confirmed, and it just . . . .

Q. Do you recall talking to a person at HealthSound and indicating that you'd had "sacroiliac joint problems, which have led to the development of his low back pain"?

A. I remember talking to him. What happened essentially is they had sent me over there for a work hardening program, which they do not have.

. . . .

Q. This office note in April—on April 25 of 2007, that would have been after your discharge from the inpatient rehabilitation hospital . . . .

. . . .

. . . I'm wondering how this entry got there, unless you told them this?

A. I got up to leave—

. . . .

. . . and I limped, and he said, "What's wrong," and I told him, "I'm still experiencing pain."

. . . .

. . . And he said, "Let me see." And he briefly examined me, and he said, "Has anyone ever done anything for

427

your S.I. joint?" And I said, "not in years. Maybe 15 years ago," and that's how it got in there.

. . . .

Q. When you say the "S.I. joint," you're talking about the low back?

A. No.

Q. Whereabouts are you—when you say "S.I. joint"—

A. Hip area.

. . . .

Q. Okay. And any recollection as to why it was that—or how it is that those problems started developing?

. . . .

A. On the—yeah. I fell out of a truck on a dock, bruised it.

. . . .

Q. Tell me about—you fell again in 2003?

A. Yeah.

Q. When you say you fell again, did you again fall out of a truck onto a dock?

A. No.

Q. Tell me about this one.

A. I just fell out of the back of a pickup.

Q. And . . . did you reinjure the area you pointed out to me before?

A. It hurt.

¶ 5.   In a letter dated June 26, 2008, Bray's counsel informed Gateway's counsel that he was scheduling depositions of individuals who would testify "as to charges being reasonable and customary for the various health care providers that have provided health care for Clayton Bray that was health care necessary by reason of the injuries sustained in the accident which is the subject of this case." Bray's counsel enclosed medical bills totaling $186,333.95, and inquired whether

> Gateway would be willing to enter into a stipulation providing that the amount shown as the "total bill" for each of the health care providers shown on the medical bills chart [enclosed], were reasonable and necessary charges for the services rendered to Clayton Bray for the injuries he sustained as a result of the occurrence of June 7, 2005.

Bray's counsel stated that "[i]f Gateway wishes to save costs by not having to proceed with these depositions, all Gateway needs to do is to advise us at your earliest convenience of the willingness of Gateway Insurance Company to enter into the stipulation suggested above."

¶ 6.   On July 8, 2008, Gateway moved the court to compel discovery of Bray's pre-accident back-related medical records. In its supporting brief, Gateway cited the information it obtained in deposing Bray and Dr. Weiss.

¶ 7.   Gateway responded to Bray's request for a stipulation in a letter dated July 16, 2008. Gateway's counsel stated that Gateway was

> willing to stipulate to most of the medical bills supplied by [Bray's counsel], but there [were] certain charges contained in [the] bills which [Gateway] decline[d] to stipulate to given that they [were] not connected with treating injuries suffered by the plaintiff as a result of the accident involved in this lawsuit.

Specifically, Gateway disputed coverage for $1,810 in charges for "services rendered for the treatment of the plaintiff's cardiovascular condition—hypertension," or for unspecified services. Counsel stated: "If you agree to omit these charges, we will stipulate to the remaining medical bills *absent some further development suggesting that doing so is improvident.*" (Emphasis added.)

¶ 8. On July 21, 2008, the trial court held a hearing on Gateway's motion to compel discovery of Bray's pre-accident medical records. Gateway requested authorizations from Bray to obtain Bray's past medical records, including from Dr. Ortiz and Dr. Johnson, whom Bray identified in his deposition. Bray's counsel opposed the motion, stating:

> As to . . . Dr. Ortiz, I don't even know if he's still alive, I don't know where he is, I've never heard of him, I don't know his first name. That was a guess of the witness as to what his name was. It was 15 years ago.
>
> As to Dr. Johnson in Kentucky, there is just simply no demonstration of any necessity to obtain those records. I pointed out what the actual testimony was with respect to the fact that he bruised his hip on two occasions, has nothing to do with the significant herniation of his dis[c] in his low back for which he's had surgery and is severely disabled.

The trial court granted Gateway's motion to compel discovery, explaining:

> [M]y task here is to award fair and reasonable compensation to Mr. Bray as a result of the accident that now is deemed to be the cause of the negligence by the insurance company's insured . . . . And the question is, what damages were caused by that accident and what is the reasonable and fair compensation for those damages? . . . It certainly seems to me that my task [is] to evaluate the preexisting condition of Mr. Bray in order

430

to answer the questions that still remain in this case, and I don't know how I can possibly do that without allowing the defense an opportunity to develop the preexisting medical information.

¶ 9. On September 12, 2008, the court held a damages hearing. Bray presented evidence of his damages following the June 7, 2005 accident, including evidence that he suffered a herniated disc requiring surgery and a year off work. Gateway cross-examined Bray's expert witness, Dr. Weiss, regarding a medical record from Methodist Family Practice for services Bray received on May 24, 2004, which was marked as Exhibit 44:

Q. Look at Exhibit 44. In your report you say that Mr. Bray told you that he had never had any back pain that was significant enough to require him to seek medical or chiropractic care, correct?

A. Correct.

Q. Exhibit 44 indicates that that information was incorrect?

A. That's right.

Q. In fact, he had a physical complaint documented in Exhibit 44 that is identical to his incident-related complaint, correct, low back pain radiating to the legs, right greater than left?

A. It could be.

. . . .

Q. Doctor, under the subjective portion it reads, "He presents today for low back pain with pain radiating to both legs, right greater than left and occasional numbness down the posterior portion of the right leg."

Did I read that correctly?

A. You read it perfectly correctly.

Q. And there's a diagnosis—there is an assessment of degenerative disc disease and sciatica?

A. That's correct.

¶ 10. The trial court found that Bray's expert medical testimony lacked credibility, and that Bray did not establish that the accident caused his herniated disc, resulting medical bills and loss of employment. However, the court also found that Bray's "already compromised spine was temporarily aggravated and made more symptomatic by the taxicab incident," thus warranting "compensation for the medical bills incurred and the pain, suffering and disability he endured during that time, even though there were other causes as well." The court found that "all of the past and future loss of earning capacity is tied to the discectomy/spinal fusion surgery and consequent residuals," and therefore found that "no past or future loss of earning capacity [was] caused by the taxicab incident." For the same reason, the court found that Bray had not established he would suffer any future pain and suffering caused by the accident. Based on its findings, the court awarded Bray $40,000 in medical expenses; $0 in past and future loss of earning capacity; and $20,000 in past and future pain and suffering. Bray appeals.

## Standard of Review

¶ 11. The interpretation of a stipulation between parties is a question of law, which we review de novo. *Stone v. Acuity*, 2008 WI 30, ¶ 21, 308 Wis. 2d 558, 747

N.W.2d 149. "[W]hether to treat a statement or purported concession as a judicial admission rests in the sound discretion of the court." *Fletcher v. Eagle River Mem'l Hosp., Inc.*, 156 Wis. 2d 165, 177, 456 N.W.2d 788 (1990). We review a trial court's factual findings under the clearly erroneous standard.[2] Wis. Stat. § 805.17(2).

## *Discussion*

¶ 12.  Bray argues that the trial court erred in limiting his damages based on its erroneous finding that some of his claimed damages were not caused by the accident. Gateway contends that the trial court properly awarded damages based on its interpretation of the stipulation between the parties and its evaluation of the evidence. We agree with Gateway.

¶ 13.  First, Bray contends that he and Gateway stipulated, in the two letters between the parties' counsel, that all of his medical expenses were caused by the accident.[3] Gateway responds that the two letters established only an agreement that the medical charges were

---

[2] Bray argues that we owe no deference to the trial court's factual findings because the clearly erroneous standard does not apply where, as here, there is no conflict in the evidence. *See, e.g., Saylor v. Marshall & Ilsley Bank*, 224 Wis. 511, 517, 272 N.W. 369 (1937). However, we are bound by well-settled law that we defer to the trial court's findings as to the historical facts and the credibility of the witnesses. *See* Wis. Stat. § 805.17(2) (2007–08).

All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

[3] The parties raise and argue whether the letters between the parties created a binding stipulation that Gateway failed to rescind. Because we conclude that any binding stipulation between the parties did not amount to a stipulation that all of

433

reasonable, not that all of the claimed medical expenses were caused by the accident. We conclude that the parties stipulated to the reasonableness of the medical expenses, and reserved the issue of causation pending discovery and trial.

¶ 14. We analyze the language of a stipulation to determine the parties' intentions, and end our inquiry if the language is unambiguous. *See Stone*, 308 Wis. 2d 558, ¶ 67. Here, Bray's counsel inquired as to whether Gateway would stipulate "that the amount shown as the 'total bill' for each of the health care providers shown on the medical bills chart [enclosed], were reasonable and necessary charges for the services rendered to Clayton Bray for the injuries he sustained as a result of the occurrence of June 7, 2005." Bray's counsel specified that the stipulation would avoid depositions of individuals who would testify "as to charges being reasonable and customary for the various health care providers that have provided health care for Clayton Bray that was health care necessary by reason of the injuries sustained in the accident which is the subject of this case." Gateway said that it would "stipulate to most of the medical bills supplied by [Bray's counsel], but there [were] certain charges contained in [the] bills which [Gateway] decline[d] to stipulate to given that they [were] not connected with treating injuries suffered by the plaintiff as a result of the accident involved in this lawsuit." Specifically, Gateway declined to stipulate to charges for hypertension or for unspecified charges. Gateway also stated that it would "stipulate to the

Bray's medical expenses were caused by the accident regardless of the evidence produced by discovery and developed at trial, we need not address these arguments.

remaining medical bills *absent some further development suggesting that doing so is improvident.*" (Emphasis added.)

¶ 15. Because the parties stipulated only that all of Bray's claimed medical expenses were caused by the accident *absent some further development,* we turn to the sequence of events surrounding the letters. In May 2008, several months before the stipulation, Gateway deposed Bray. At the deposition, Gateway questioned Bray about a medical record from April 25, 2007, indicating that Bray was experiencing current low back pain, had experienced sacroiliac joint pain fifteen years previously, and had been diagnosed with a degenerative disc two years previously. However, during questioning, Bray denied any previous low back pain and insisted that his previous pain had been in his hip. In June 2008, Bray requested that Gateway stipulate that all of his medical expenses were reasonable and necessary for the injuries he sustained in the accident. In July 2008, Gateway moved the court to compel discovery of Bray's previous low back-related medical records, based on the information developed at his deposition. Later that month, Gateway responded to Bray's request for a stipulation by agreeing to stipulate to the medical expenses, but qualified the stipulation with the caveat that it was subject to further developments.

¶ 16. After the parties stipulated to the reasonableness of Bray's medical expenses for the injuries sustained as a result of the accident absent further development, the court held a hearing and granted Gateway's motion to compel discovery of Bray's pre-accident low back-related medical records. The court then held a damages hearing. While cross-examining Dr. Weiss, Gateway referenced a medical record from

May of 2004, diagnosing Bray with low back pain, osteoarthritis, degenerative disc disease, and sciatica.

¶ 17.  Bray contends that there were no further developments following the stipulation because Gateway had already discovered through Bray's deposition that he had a history of low back pain. We disagree. Bray specifically denied a history of low back pain during his deposition, and stated his past pain had related to his hip rather than his lower back. Discovery revealed a medical record from May 2004 which confirmed the diagnosis of degenerative disc disease and low back pain that was indicated in the April 2007 document reviewed during Bray's deposition. We conclude that the medical history Gateway obtained through discovery was a "further development" as contemplated under the parties' stipulation. Thus, we reject Bray's argument that the letters constituted a stipulation or judicial admission as to causation. *See Fletcher*, 156 Wis. 2d at 174–77 (judicial admission is "[a]n express waiver made in court or preparatory to trial by the party or his [or her] attorney conceding for the purposes of the trial the truth of some alleged fact." (citation omitted)).

■

¶ 18.  Next, Bray contends that following the default judgment, the court was prohibited from requiring proof of causation at the damages hearing. He contends that at a damages hearing following default judgment, the defendant may only present evidence of mitigation or diminution of damages, but may not argue causation. *See Smith v. Golde*, 224 Wis. 2d 518, 530, 592 N.W.2d 287 (Ct. App. 1999) ("If the defendant contests the amount of damages, he may appear at the hearing to assess damages, cross-examine the plaintiff's witnesses, and present evidence to mitigate or be heard as to the

diminution of damages."). Gateway responds that a default judgment may not grant more than demanded in the complaint, *see Klaus v. Vander Heyden,* 106 Wis. 2d 353, 359, 316 N.W.2d 664 (1982), and that Bray's complaint only alleged unspecified low back injuries as a result of the accident. Thus, Gateway argues, the default judgment left open the question of which low back injuries that Bray suffered were actually caused by the accident. We agree, and conclude that the trial court properly required proof of causation at the damages hearing.

¶ 19.  "In the case of a default judgment, relief is limited to that which is demanded in the plaintiff's complaint." *Id.* "In a judgment rendered by default, we must ensure that the defendant's right to notice has been protected." *Id.* When we construe a complaint to determine what has been demanded, we do so to do substantial justice. *Id.*

¶ 20.  Bray argues that paragraph six of his complaint alleged that the accident caused all of his claimed back injuries, and thus the default judgment on that complaint precluded any argument over causation at the damages hearing. Paragraph six of Bray's complaint states:

> That as a direct . . . cause of the negligence of . . . [the] employee of Ace Cab Company LLC, the Plaintiff, Clayton Bray, sustained injuries to his person, including severe injuries to his low back necessitating health care and treatment in the past and he will be required to undergo or receive necessary health care treatment in the future. Furthermore, that as a result of said injuries . . . caused by the aforesaid negligence of the . . . employee of Ace Cab Company LLC, the Plaintiff has, and will in the future, sustain[] the loss of

437

capacity to earn, he has and will for the remainder of his life experience pain, suffering and the loss of the enjoyment of the everyday activities of life.

¶ 21.   Reading paragraph six of Bray's complaint, as we must, to do justice to the parties and "limit the relief obtainable" to ensure protection of the defendant's right to notice, we conclude that Bray's complaint alleged only that Bray suffered injury to his lower back as a result of the accident, and did not specify the extent of those injuries. *See id.* Thus, when Gateway defaulted on the complaint, it admitted only that Bray suffered injury to his low back in the accident. However, the scope of Bray's injuries and resulting damages was not alleged in the complaint. Because "the conclusiveness of a default judgment is limited to the material issuable facts which are well pleaded in the declaration or complaint," *id.* at 359–60, the default judgment in this case is not conclusive as to the extent of Bray's injuries caused by the accident.

¶ 22.   Next, Bray argues that the trial court's finding that the accident did not cause Bray's disc herniation and consequent medical treatment and lost income must be overturned because the undisputed facts established that all of Bray's claimed damages were caused by the accident. Thus, Bray contends, the court's finding that Bray's herniated disc and resulting medical expenses and loss of employment were not caused by the accident, but instead related to earlier injuries, was clearly erroneous. We disagree.

¶ 23.   Bray argues that the evidence he presented —his own testimony as to his pain and suffering following the accident, the report of his treating physician, and the testimony of Dr. Weiss—all established that his

438

herniated disc was caused by the accident. The problem with Bray's argument is that while this is one finding that might be reached based on the trial evidence, it is not the only finding that the evidence allows.

¶ 24.   Whether damages were caused by a tort-feasor's negligence is a question of fact. *See Estate of Cavanaugh v. Andrade*, 202 Wis. 2d 290, 306, 550 N.W.2d 103 (1996). "[A] factual finding is not clearly erroneous merely because a different fact-finder could draw different inferences from the record." *State v. Wenk*, 2001 WI App 268, ¶ 8, 248 Wis. 2d 714, 637 N.W.2d 417. Moreover, a trial court may reject an expert's opinion even if it is uncontradicted. *Id.*, ¶ 9. The trial court explained that it rejected Dr. Weiss' testimony based on the following:

> First, Dr. Weiss appears to have misunderstood the nature of the taxicab impact, and particularly the force involved. Plaintiff testified on cross examination that he was retrieving his luggage from the cab's trunk when the cab began to back up. He grabbed onto the open trunk as he lost his balance and was simply dragged backwards, not striking any portion of his body on the ground nor suffering any visible sign of injury to his body. Dr. Weiss presumed that the accident knocked plaintiff to the ground. Exhibit 9, p.2. As described by plaintiff, the amount of force imparted by the taxicab incident appeared fairly minimal—described in his deposition, p. 18 as "pressure around the knee area," and certainly no more severe than the stresses routinely experienced by a trucker in the day-to-day rigors of this strenuous vocation. The only reason plaintiff went to the doctor on the night of the accident was because his employer ordered him to do so.
>
> Second, when Dr. Weiss gave his initial opinion on causation, he lacked *any* pre-existing medical records

439

relating to plaintiff, including one approximately [one] year before the taxicab incident which documented complaints by plaintiff virtually identical to those Dr. Weiss opined to be indicative of a herniated disc. After Dr. Weiss was shown this record, his continued resolute adherence to his causation opinion was questionable and ultimately unpersuasive.

Third, and closely related, Dr. Weiss was initially told by plaintiff that he had no prior significant difficulties with his low back, and never required medical or chiropractic treatment for his low back. This was untrue. In fact, plaintiff had documented severe, symptomatic osteoarthritis and degenerative disc disease pre-existing the taxicab accident, and had been treated by both a chiropractor and physician previously. Again, when subsequently advised that his history was incorrect, Dr. Weiss essentially brushed it off as inconsequential to his opinion—again, not credible.

Fourth, Dr. Weiss was not a treating physician and first saw plaintiff a number of years after the taxicab incident and only as a hired expert for purposes of this litigation. His social relationship with plaintiff's counsel, together with his substantial fees, cast doubt on his objectivity. That Dr. Weiss was provided only a select set of *postaccident* records cherry-picked by plaintiff's counsel, contrary to what Dr. Weiss testified was optimal for an independent evaluator, only adds to the doubts, as did his demeanor and presentation, which tended more towards advocacy than impartiality. And his testimony regarding necessity of the $184,000–plus medical bills, based upon a cursory glance at their summary without the benefit of comparing the charges to plaintiff's medical records, seems reckless at best.

Fifth, plaintiff missed no work for 15 months post-accident in his physically demanding job as a truck driver.

440

Sixth, the initial magnetic resonance imagery (MRI) several months post-accident revealed no herniated disc, although it did show longstanding pre-existing spinal pathology.

Based on these findings, the court said that it could "only guess whether or not the subject accident was a 'substantial factor' in causing the disc herniation and consequent need for surgery, which resulted in the astronomical medical bills and year-long postsurgical absence from work."

¶ 25.   Bray argues that the court's causation finding is clearly erroneous because it is contrary to the uncontradicted testimony by Bray that his low back pain began immediately following the accident; the uncontradicted medical report of Dr. Mehta indicating that Bray's low back pain was related to a herniated disc, and that the herniated disc was related to the accident; and the uncontradicted testimony of Dr. Weiss that Bray's low back injury, including the herniated disc, was caused by the accident. Bray contends that there was no evidence as to any other cause of Bray's herniated disc, and points out that there was no evidence that a herniated disc was diagnosed before the accident. Bray also argues that there was no basis for the trial court to find that Bray only provided Dr. Weiss select post-accident records, and that there was no significant social relationship between Dr. Weiss and Bray's counsel. Bray argues that contrary to the court's finding, he testified that he did miss work based on his low back pain, and that at other times he continued to work despite the pain. Finally, Bray contends that the court erred in finding that the first MRI did not show a herniated disc, because the record reveals that the MRI was repeated because the first MRI was an open MRI and the reviewing doctor did not accept open MRIs.

441

¶ 26. Gateway responds that the trial court was free to accept or reject Bray's proffered expert testimony. *See id.* Then, without analysis, Gateway asserts that all of the trial court's reasons behind its causation finding were supported by the record.

¶ 27. First, to the extent Bray identifies facts in the record that arguably conflict with the trial court's reasons behind its causation finding—pertaining to what records were supplied to Dr. Weiss, the relationship between Dr. Weiss and Bray's counsel, whether Bray missed work due to low back pain following the accident, and the results of the first MRI—we conclude that those facts do not establish that the trial court's causation finding was clearly erroneous. As highlighted above, the trial court's finding was well supported by its evaluation of the credibility of Bray's expert witness. That is, even if we agree with Bray's statement of the facts in the record, those facts do not establish that Bray's herniated disc, surgery, and loss of income were caused by the accident. As the trial court stated, Bray had the burden to prove causation, *see Zak v. Zifferblatt*, 2006 WI App 79, ¶ 10, 292 Wis. 2d 502, 715 N.W.2d 739, and Bray does not dispute the court's finding that expert testimony was required to establish that Bray's herniated disc was caused by the accident, *see Cramer v. Theda Clark Mem'l Hosp.*, 45 Wis. 2d 147, 150, 172 N.W.2d 427 (1969).

¶ 28. Thus, ultimately, the problem with Bray's argument on causation is that it requires us to weigh the credibility of the witnesses, something we may not do. *See Global Steel Prods. Corp. v. Ecklund Carriers, Inc.*, 2002 WI App 91, ¶ 10, 253 Wis. 2d 588, 644 N.W.2d 269. The trial court clearly explained its causation

finding, and we do not agree with Bray that the court's reasoning was contrary to the evidence. Rather, it reflected a view of the evidence that differed from Bray's. This is not a basis to overturn the court's findings. Accordingly, we affirm.

*By the Court.*—Judgment affirmed.