COURT OF APPEALS
DECISION
DATED AND FILED

June 13, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2021AP1805**

STATE OF WISCONSIN

Cir. Ct. No.  **2015CV224**

IN COURT OF APPEALS
DISTRICT III

WILLIAM G. SCHMIDT,

   PLAINTIFF-APPELLANT,

 V.

POLK BURNETT ELECTRIC COOPERATIVE,

   DEFENDANT-RESPONDENT.

APPEAL from a judgment of the circuit court for Polk County: DANIEL J. TOLAN, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. William Schmidt, pro se, appeals a judgment dismissing his breach of contract claims against his former employer, Polk Burnett

Electric Cooperative ("the Co-op").  Schmidt argues that the circuit court erred by concluding that some of his breach of contract claims were preempted by the Employee Retirement Income Security Act of 1974 (ERISA).  He also argues that the court erroneously found, after a bench trial, that the Co-op terminated his employment for cause.[1]  We reject Schmidt's arguments and affirm.

## BACKGROUND

¶2      In January 2009, Schmidt began working as the general manager of the Co-op.  Approximately one year later, the Co-op and Schmidt executed an employment agreement, which set forth certain terms and conditions of Schmidt's employment.

¶3      In particular, and as relevant to this appeal, the agreement required Schmidt to "devote his full time and his best endeavors to the management of the [Co-op] and the promotion of its interests and welfare."  The agreement also contained a provision discussing Schmidt's entitlement to benefits, including his right to be treated as an eleven-year employee for purposes of calculating those benefits:

---

[1] Schmidt raises several other arguments regarding alleged procedural errors.  In particular, Schmidt complains about certain delays in the circuit court proceedings, his mediation experience, the overall "[l]ack of focus on relevant subject matters and factual evidence [in] the case," and an alleged breach of confidentiality.  Schmidt does not cite any relevant legal authority in support of these arguments, nor does he identify the relief, if any, to which he would be entitled.  Accordingly, we will not address these undeveloped and unsupported arguments.  *See* *State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (we need not address an argument that is undeveloped and unsupported by legal authority).  We also note that Schmidt has not shown, nor does it appear from our review of the record, that he previously raised these arguments in the circuit court, which buttresses our decision not to consider these arguments.  *See* *Townsend v. Massey*, 2011 WI App 160, ¶24, 338 Wis. 2d 114, 808 N.W.2d 155 (we need not consider arguments raised for the first time on appeal).

> [Schmidt] shall be entitled to and is to receive all present and future fringe benefits which are provided by the [Co-op] for its other employees. [Schmidt] will receive credit for years of service in the electric cooperative program and shall therefore be deemed to have commenced employment on January 5, 2009 as an 11 year employee in such program for the purpose of calculating benefits provided by the [Co-op] to its employees. This will include waiving any waiting period for the benefits provided to employees through [the National Rural Electric Cooperative Association's (NRECA)] benefit programs.

Finally, the agreement required that if the Co-op terminated Schmidt's employment, the Co-op would have to pay Schmidt severance for one year unless the termination was "for cause":

> Nothing in this Agreement shall prevent, limit, or otherwise interfere with the right of the [Co-op] to terminate the services of [Schmidt] at any time and for any reason or no reason provided, however, that upon such termination, the [Co-op] will continue to pay [Schmidt] as severance, [Schmidt's] salary and benefits … for a period equal to twelve (12) months …, unless the termination is for cause, which shall include, without limitation, any act of … nonfeasance, … or for any act, performance or behavior that … is contrary to the best interests of the [Co-op] ….

¶4 At some point, Schmidt discussed the employment agreement with his attorney. The attorney sent letters to Schmidt in both May 2011 and February 2012, opining that Schmidt was "contractually entitled to receive 11 years of credit for all benefits." The February 2012 letter also advised Schmidt that he should raise his benefit concerns with the Co-op's board of directors because it would "force them to declare their position" on whether Schmidt was entitled to additional benefits. Schmidt and the Co-op executed four addendums to the employment agreement between 2011 and 2013. However, Schmidt never informed the Co-op of his concerns regarding benefits while executing the addendums.

¶5 In April 2015, Schmidt gave a letter to the chairman of the Co-op's board of directors, Edward Gullickson, expressing his intent to retire on July 15, 2015, "contingent on a mutually agreed-upon resolution to certain employment agreement issues described below." Schmidt explained that, based on his understanding of the employment agreement, the Co-op should have given him an additional six years and eight months of service credit for the "NRECA Retirement and Security Plan," an additional eleven years of contributions to his "NRECA 401(k) Pension Plan" and health savings account, and an additional 2,024 hours of paid time off. Schmidt also asserted that once he received his requested service credit, he should be eligible for the "Retiree Health Insurance Plan." In total, Schmidt estimated that these employee benefits were worth over $500,000. He also requested that these issues be resolved by his conditional retirement date in three months.

¶6 After receiving Schmidt's letter, Gullickson discussed the validity of Schmidt's concerns with two of the Co-op's employees and the Co-op's general counsel. Gullickson then scheduled an executive meeting at which the executive committee discussed Schmidt's demands and met with Schmidt. The following day, the Co-op held a full board meeting and again met with Schmidt for a portion of that meeting. Later that day, Gullickson gave Schmidt a letter stating that the Co-op accepted his resignation, which would be effective immediately. The Co-op did not provide Schmidt with any severance as part of its decision.

¶7 Schmidt subsequently filed this action, alleging that the Co-op breached the employment agreement by refusing to provide him with his requested benefits and by failing to pay him severance for one year. The Co-op later filed a motion for summary judgment. In turn, the circuit court granted partial summary

judgment to the Co-op on Schmidt's breach of contract claims, concluding that all of Schmidt's claims "relating to retirement benefits" were preempted by ERISA.

¶8      About one year later, the parties tried the remaining issues to the circuit court, focusing largely on whether Schmidt was entitled to severance. Schmidt testified that he never resigned or retired from his position with the Co-op.  He also testified that the Co-op gave him "[a]bove average or extraordinary" annual reviews for his performance.  Gullickson confirmed that Schmidt received positive performance reviews and that up until April 2015, the board of directors liked Schmidt and wanted him to remain as the Co-op's general manager.  Gullickson further testified, however, that the board "lost trust in [Schmidt]" after his demands and thought that he needed to be removed. Gullickson, the Co-op's general counsel, and another board member each testified that Schmidt seemed to be threatening litigation when they met with Schmidt to discuss his demands.

¶9      After the trial, the circuit court issued an oral ruling and a written order, dismissing Schmidt's remaining claims.  The court found that the Co-op terminated Schmidt's employment and that Schmidt did not retire or resign.  The court also found that Schmidt committed an act of nonfeasance by not earlier notifying the board of directors regarding his benefits claim and that Schmidt engaged in behavior that was contrary to the best interests of the Co-op by the manner in which he demanded the additional benefits.  The court therefore found that the Co-op had terminated Schmidt's employment for cause and concluded that the Co-op was not obligated to pay Schmidt severance under the employment agreement.

¶10     Schmidt now appeals, advancing two main arguments: (1) that the circuit court erred by granting partial summary judgment on the basis of ERISA preemption; and (2) that the court erroneously found that the Co-op terminated his employment for cause.[2]  Additional facts will be provided as necessary below.

## DISCUSSION

### I.  Breach of contract claims involving retirement benefits

¶11     We review a circuit court's decision to grant a motion for summary judgment de novo, applying the same methodology as the circuit court.  *Quick Charge Kiosk LLC v. Kaul*, 2020 WI 54, ¶9, 392 Wis. 2d 35, 944 N.W.2d 598.  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  WIS. STAT. § 802.08(2) (2021-22).  As noted above, the circuit court concluded, as a matter of law, that Schmidt's breach of contract claims relating to retirement benefits were preempted by ERISA.

¶12     ERISA provides "a uniform regulatory regime over employee benefit plans" and includes expansive preemption provisions that "are intended to ensure that employee benefit plan regulation would be 'exclusively a federal

---

[2] Schmidt also discusses "Basic Contract Law" in his briefing, but, in doing so, it is unclear whether Schmidt is simply discussing the principles of contract interpretation or whether Schmidt is advancing some independent legal argument.  Our opinion in this case is informed by the law governing contract interpretation. *See Ash Park, LLC v. Alexander & Bishop, Ltd.*, 2015 WI 65, ¶¶34-38, 363 Wis. 2d 699, 866 N.W.2d 679 (discussing principles of contract interpretation).  However, to the extent Schmidt is arguing that the language in the employment agreement requires a different result in this case, that argument is not sufficiently developed to warrant our consideration. *See Pettit*, 171 Wis. 2d at 646-47.

concern.'" ***Aetna Health Inc. v. Davila***, 542 U.S. 200, 208 (2004) (citation omitted). ERISA also includes a "comprehensive civil enforcement scheme," *see* 29 U.S.C. § 1132(a), which demonstrates "that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly." ***Davila***, 542 U.S. at 208-09 (citation omitted). Thus, "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." ***Id.*** at 209.

¶13     In determining whether a party's cause of action is completely preempted by ERISA's civil enforcement mechanism, we must consider: (1) whether the plaintiff, "at some point in time, could have brought his [or her] claim under ERISA § 502(a)(1)(B)"; and (2) whether "there is no other independent legal duty that is implicated by a defendant's actions." ***Davila***, 542 U.S. at 210. Both circumstances must be present for ERISA to completely preempt a state-law cause of action. ***Id.*** at 210.

¶14     It is undisputed that the Co-op had defined-benefit and defined-contribution plans for its employees through NRECA and that those plans are subject to ERISA. Schmidt nevertheless argues that his retirement benefits claims were not preempted by ERISA because they "do not arise from the NRECA plan[s] or [their] terms but rather arise from the terms of the employment contract." Schmidt suggests that ***Franciscan Skemp Healthcare, Inc. v. Central States Joint Board Health & Welfare Trust Fund***, 538 F.3d 594 (7th Cir. 2008), should govern the outcome in his case.

¶15     In ***Franciscan Skemp***, a healthcare provider asserted misrepresentation and estoppel claims against an employee benefit plan

7

administrator that had initially promised to provide coverage for a plan participant but then refused to do so once the treatment had been provided. *Id.* at 596. The Seventh Circuit Court of Appeals held that the provider's claims were not preempted by ERISA. *Id.* at 599. In doing so, the court recognized that the healthcare provider was not asserting its claims as an assignee of the plan participant but, rather, in its own right. *Id.* at 597-98. The court further stated that the provider's claims did not arise "from the plan or its terms, but from the alleged oral representations made by" the plan administrator to the provider. *Id.* at 597. In the end, the court concluded that the healthcare provider could not assert its claims under the ERISA civil enforcement scheme and that the relevant legal duties implicated by the facts of the case "are entirely independent from ERISA and any plan terms." *Id.* at 598-99.

¶16    The circumstances in this case are meaningfully different from those in *Franciscan Skemp*. Here, Schmidt was the participant of the employee benefit plans seeking to recover damages that he sustained as a result of the Co-op's failure to contribute to those plans. In addition, Schmidt's claims arise from the terms of the employee benefit plans because the employment agreement guarantees Schmidt only the "benefits which are provided by the [Co-op] for its other employees." Thus, if there were no employee benefit plans "provided by the [Co-op] for its other employees," the Co-op would have no independent duty under the employment agreement to provide those benefits to Schmidt. Notably, the employment agreement is largely silent as to what benefits, if any, the Co-op would provide to Schmidt. Accordingly, the Co-op's duties are subject to—and entirely dependent on—the terms of the benefit plans, regardless of whether the employment agreement attempts to modify the Co-op's obligations under those plans.

¶17     Other than arguing that his claims do not arise from the terms of the employee benefit plans and citing ***Franciscan Skemp***, Schmidt does not further develop any argument that ERISA preemption does not apply, nor does he develop an argument regarding the two-step analysis in ***Davila***.  Schmidt argues in his reply brief that he "disagrees with the [Co-op's] independent legal duty assertion," but he fails to explain how the Co-op's analysis was incorrect.  We will not abandon our neutrality to develop arguments for him.  *See **Industrial Risk Insurers v. American Eng'g Testing, Inc.***, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82.

¶18     Regardless, both ***Davila*** requirements for complete preemption appear to be present in this case.  First, as a plan participant, Schmidt could have filed an ERISA claim to recover benefits due to him under the terms of the employee benefit plans or to enforce or clarify his rights under the terms of those plans.  *See* 29 U.S.C. § 1132(a)(1)(B).  Although Schmidt might not have a remedy under an ERISA claim, "the availability of a federal remedy is not a prerequisite for federal preemption."  *See **Lister v. Stark***, 890 F.2d 941, 946 (7th Cir. 1989).  Second, Schmidt's claims do not involve an independent legal duty because, as discussed above, Schmidt's entitlement to benefits is governed by—and dependent on—the terms of the Co-op's employee benefit plans alone.

¶19     Finally, Schmidt identifies several issues that are irrelevant to the issue of ERISA preemption.  For example, Schmidt criticizes the circuit court for erroneously believing that he had asked the Co-op "to fund 11 years of retirement benefits."  He also suggests that the court should have considered the Co-op's prepayment contribution to the defined-benefit plan in 2013 and the Co-op's deferred compensation agreement with Schmidt's predecessor.  Even if we assume, without deciding, that these various facts are true, they do not alter our

conclusion that Schmidt's retirement benefits claims were preempted by ERISA because he could have made a claim for them under ERISA and because there is no other independent legal duty implicated by the Co-op's actions.[3]

## II. Breach of contract claim involving severance

¶20     Schmidt next challenges the circuit court's conclusion that the Co-op did not breach the employment agreement by refusing to pay him severance. Specifically, Schmidt contends that there is no evidence to support a finding that the Co-op terminated his employment for cause, such that the Co-op was excused from paying severance under the employment agreement.

¶21     We will uphold a circuit court's factual findings unless they are clearly erroneous. *Phelps v. Physicians Ins. Co. of Wis., Inc.*, 2009 WI 74, ¶34, 319 Wis. 2d 1, 768 N.W.2d 615. "[A] factual finding is not clearly erroneous merely because a different fact-finder could draw different inferences from the record." *Bray v. Gateway Ins. Co.*, 2010 WI App 22, ¶24, 323 Wis. 2d 421, 779 N.W.2d 695 (2009) (alteration in original; citation omitted). Rather, a factual finding is clearly erroneous only if "it is against the great weight and clear preponderance of the evidence." *Phelps*, 319 Wis. 2d 1, ¶39 (citation omitted). Thus, "findings of fact will be affirmed on appeal as long as the evidence would permit a reasonable person to make the same finding." *Royster-Clark, Inc. v. Olsen's Mill, Inc.*, 2006 WI 46, ¶12, 290 Wis. 2d 264, 714 N.W.2d 530 (citation omitted).

---

[3] Because we conclude that Schmidt's breach of contract claim involving retirement benefits was completely preempted, we need not address the conflict preemption principles also discussed in the Co-op's brief. *See Turner v. Taylor*, 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (we need not address all issues raised by the parties if one is dispositive).

¶22 Here, the circuit court found in its oral ruling that Schmidt had committed an act of nonfeasance. In doing so, the court recognized that nonfeasance is the "nonperformance of some act which a person is obligated or has a responsibility to perform." *See Nonfeasance*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("The failure to act when a duty to act exists."). The court also noted that Schmidt had a contractual obligation under the employment agreement "to devote his full time and best endeavors to the management of the [Co-op] and to the promotion of its interest and welfare." Ultimately, the court found that Schmidt "breached that obligation" by waiting four years to notify the Co-op of his $500,000 benefits claim.

¶23 The circuit court's nonfeasance finding is supported by the evidence presented at trial. The employment agreement unambiguously stated that Schmidt "shall devote … his best endeavors to … the promotion of [the Co-op's] interests and welfare." Despite that obligation, Schmidt failed to notify the Co-op of his $500,000 benefits claim after consulting with an attorney regarding the possible validity of that claim in both May 2011 and February 2012. He also failed to raise his concerns when the parties executed four addendums to the employment agreement between 2011 and 2013. Instead, Schmidt waited until April 2015 to simultaneously express both his intent to retire and his concerns about the benefits, while also requesting that the Co-op resolve those concerns by his conditional retirement date in three months. Based on all of this evidence, a fact finder could reasonably determine—as the circuit court did here—that Schmidt committed an act of nonfeasance by failing to promptly notify the Co-op about his potential claim of employee benefits. Accordingly, the court's nonfeasance finding was not clearly erroneous.

¶24     The circuit court also found that Schmidt "engaged in behavior that was contrary to the best interests of the [Co-op]." In support of this finding, the court again noted that Schmidt waited years to inform the Co-op of his claim that was in excess of $500,000. The court also stressed that the manner in which Schmidt notified the Co-op of his claim created "a hostile environment" because he made "his demands on his way out the door in an attempt to strong-arm the [Co-op] with the payment of benefits that [the Co-op] didn't believe [it was] obligated to pay." The court found that Schmidt's behavior directly caused the Co-op to, among other things, hold an executive meeting, hold a board meeting, and consult with its attorney.

¶25     All of these findings are supported by evidence in the record. By making his retirement date contingent on the resolution of his claim, Schmidt put the Co-op in the difficult position of having to choose between: (1) immediately paying a large sum of money that the Co-op did not believe it was obligated to pay; or (2) keeping Schmidt in his role as the general manager after the Co-op rejected his benefits claim *and* his desired retirement. This predicament became even more untenable when the Co-op's board of directors met with Schmidt. According to Gullickson, Schmidt got "very upset" while meeting with the board and said that his concerns "would have to be settled or he would have to seek legal advice," which Gullickson interpreted as a possible threat of litigation. The Co-op's general counsel and another board member, Charles Brookshaw, also testified that Schmidt threatened litigation while meeting with the board of directors. Brookshaw further testified that Schmidt's demands and behavior caused the Co-op to question "how [it could] possibly keep [Schmidt] on. We have someone now that has become adversarial and is not looking, again, to … function in the best interest of the [C]o-op."

12

¶26 Schmidt argues that he "never threatened legal action verbally or in writing" and that such a suggestion is false and "unsubstantiated." The record, however, belies Schmidt's argument. As noted above, three different witnesses testified that Schmidt seemed to be threatening litigation over the disputed benefits, and one of those witnesses testified that Schmidt actually used the word "litigation"—albeit in "somewhat [of a] casual[]" manner. Although Schmidt testified that he never threatened litigation until he "was being walked out the door," the circuit court could—as the ultimate arbiter of credibility—reject that testimony. *See Welytok v. Ziolkowski*, 2008 WI App 67, ¶28, 312 Wis. 2d 435, 752 N.W.2d 359. Furthermore, even if Schmidt did not explicitly threaten the use of litigation, his demand letter intimated such a possibility because Schmidt asked for a very large sum of money, he noted that he had already communicated with two law firms about the issue, and he demanded that his concerns be resolved within three months.

¶27 Under these circumstances, the circuit court reasonably determined that Schmidt's actions and behavior created a hostile environment and that he was essentially attempting to "strong-arm" the Co-op into paying him. The court could therefore find that Schmidt engaged in behavior that was contrary to the best interests of the Co-op.

¶28 Accordingly, the circuit court could reasonably find, as it did, that the Co-op terminated Schmidt's employment for cause. As noted earlier, the employment agreement's definition of "cause" included acts of nonfeasance and behavior that is contrary to the Co-op's best interests. Although the court found that both were present here, either finding—on its own—would have been sufficient to establish the necessary "cause" under the employment agreement.

13

¶29 Schmidt disagrees with the circuit court's ultimate finding that his employment was terminated for cause, emphasizing that the Co-op never told him, either in writing or orally, the cause for which his employment was terminated. Be that as it may, Schmidt has not identified any part of the employment agreement that requires the Co-op to communicate the relevant reasons for the termination in order for the termination to be for cause. Furthermore, for the reasons that we have already explained, the court reasonably found that the Co-op did, in fact, terminate Schmidt for cause because he committed acts of nonfeasance and engaged in behavior that was contrary to the Co-op's best interests.

¶30 In short, because the circuit court found that the Co-op had terminated Schmidt's employment for cause—and such a finding was not clearly erroneous—the court properly concluded that the Co-op was not obligated under the employment agreement to pay Schmidt severance.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2021-22).

14